[No. 23794.  Department Two.  August 11, 1932.]

# The State of Washington, *Respondent*, v. J. F. Stone, *Appellant*.[1]

[1]Reported in 13 P. (2d) 427.

*Fred M. Bond,* for appellant.

*John I. O'Phelan* and *John J. Langenbach,* for respondent.

HOLCOMB, J.—Appellant was prosecuted in the court below for murder in the first degree, found guilty by a jury, which recommended that the death sentence be not imposed, and the trial court accordingly sentenced him to life imprisonment. This appeal results.

The information, omitting the formal parts, reads:

"That he, the said J. F. Stone on the 12th day of August, 1931, in Raymond, Pacific county, Washington, then and there being without any excuse or justification therefor did then and there wilfully, wrongfully, maliciously and feloniously with a premeditated design to effect the death of a human being to-wit, George John, did then and there wilfully, wrongfully, maliciously and feloniously shoot, wound and kill the said George John with a revolver loaded with powder and ball, which he, the said J. F. Stone, then and there held in his hand and did then and there shoot and discharge the said revolver at, against and into the body of said George John and did thereby mortally wound and kill the said George John contrary to the form of the statutes," etc.

This information was filed in the office of the clerk of the superior court of Pacific county, Washington, on August 15, 1931.

Before entering his plea of not guilty to the information, appellant demurred to it upon the grounds that it does not state facts sufficient to constitute the crime of murder in the first degree; that it does not state facts to constitute any crime or offense whatsoever against the laws of the state of Washington; that it does not state facts sufficient to give the court jurisdiction of any subject matter; that the court has no jurisdiction of the subject matter mentioned in the

information; that the court does not have any jurisdiction over the defendant.

The trial court overruled the demurrer, which constitutes the basis of the first claim of error on the part of appellant.

It is asserted by appellant that the information is insufficient for two reasons: (a) it does not allege that deceased died within a year and a day; (b) it does not allege that the deceased died in the county of Pacific, or within the state of Washington.

█ Great reliance is placed by appellant on our own case of *State v. Spadoni,* 137 Wash. 684, 243 Pac. 854, and on *Ball v. United States,* 140 U. S. 118.

The *Spadoni* case was an unusual one in that the information therein alleged that Spadoni, in Pierce county, Washington,

" . . . on or about the 11th day of March, Nineteen hundred and 21, then and there being, unlawfully and feloniously and with a premeditated design to effect the death of Harry Hallen, a human being, did shoot a pistol loaded with powder and ball at and into the body of the said Harry Hallen, and thereby mortally wounding the said Harry Hallen, from which mortal wounds the said Harry Hallen did die; and that such killing of the said Harry Hallen as herein alleged was neither excusable nor justifiable. . . ."

It is to be noted that the crime charged was that of the murder of the deceased on March 11, 1921, and he was formally charged with the crime on April 10, 1925, nearly four years and one month after it had been committed. Although the information charged that the felonious assault with a premeditated design to effect the death of the deceased occurred in Pierce county more than four years before, there was no allegation that the death occurred in Pierce county, Washington, or that it occurred within a year and a day after the assault was committed. It was there ob-

served that, at common law, to constitute a felonious homicide the death of the person receiving a mortal wound must ensue within a year and a day from the time of the infliction of the wound, which was regarded as a matter of substance, material to the issue, and if death did not result within the prescribed time the offense was not a felony, as the common law conclusively presumed that the wound was not the cause of the death, and proofs were never admitted to show to the contrary.

Neither that case nor the *Ball* case, cited by counsel, have any controlling influence here. In the information before us, it is precisely and definitely stated that, on the day alleged, which was but three days before the date of the filing of the information, in Pacific county, Washington, the malicious and felonious assault with a premeditated design to effect the death of John was then and there wilfully, wrongfully and maliciously committed by shooting, wounding and killing John with a revolver loaded with powder and ball then and there held in the hand of defendant, and that he did then and there and thereby mortally wound and kill John.

The primary and accepted meaning of "then", according to Webster, is "at that time." It also has a secondary meaning, "soon afterward, or immediately." The primary and accepted meaning of "there", according to Webster, is "in or at that place." Consequently, there can be no possibility of a misunderstanding on the part of appellant as the accused, as to what was intended, when it was alleged that the shooting, mortally wounding, killing and death of John, all occurred on August 12, 1931, in Raymond, Pacific county, Washington.

Moreover, in *State v. Baldwin,* 15 Wash. 15, 45 Pac. 650, this court held that the *Ball* case was decided

under the common law rule, which is not applicable here under our statutes. It does, however, support the reasoning of the author of the opinion in the *Spadoni* case, that, under the common law, where the assault and the result of the assault, that is, the death, on the face of the information appeared to have been so widely apart in time even under our statute, Rem. Comp. Stat., § 2055, that the pleading must contain a statement of the acts constituting the offense and, under Id., § 2057, must be direct and certain as regards the crime charged, the information was defective in form and substance.

Moreover, this case is like the case of *State v. Champoux,* 33 Wash. 339, 74 Pac. 557, where the allegation of the information as to when the death occurred after the assault was much more defective than in the instant case. It was there alleged that the assault was made on November 5, 1902, and that the deceased "then and there languished and languishing died," and the information being filed on November 8, 1902, it was held that the allegation of the information was sufficient to charge that the death, although after alleging that the deceased languished, occurred within a year and a day after the assault.

■ Regarding the second contention against the sufficiency of the information that it does not allege the place of the death of John, we think what we have said before sufficiently answers that complaint. A number of cases, including the *Ball* case by the United States supreme court, are cited and quoted as to this contention, but they are not apt. For example, *State v. Rector,* 158 S. C. 212, 155 S. E. 385, is extensively quoted by appellant, and it is asserted that that court held an indictment fatally defective for the reason that it failed to allege the place of the death of the deceased.

Appellant manifestly misconceives the decision quoted in that case, for upon examining the opinion it seems that, under an allegation in an indictment more defective than the one in the case before us, which the trial court had quashed on two grounds, was affirmed by the appellate court on only one ground, namely, that the indictment was found by grand jurors, part of whom were not qualified to serve as such grand jurors. The court distinctly held that the trial judge committed error in quashing the indictment in the case because of the supposed failure of the instrument to allege the place of the death of the deceased. It was there held that an indictment stating the county where the shooting occurred and alleging that defendants "then and there . . . killed and murdered" sufficiently showed the place of deceased's death.

To the same effect is *Alderson v. State,* 196 Ind. 22, 145 N. E. 572, on which appellant also relies. The indictment in that case was somewhat similar to the information in *State v. Champoux, supra.*

We conclude that the information in this case is not deficient in charging the time and place of death, under our statutes and decisions, or under any of the cases cited by appellant.

The evidence in the record shows that the deceased was the owner and manager of a cafe in Raymond, Pacific county, Washington. While engaged in his work as cook and manager about three o'clock in the afternoon on August 12, 1931, and while talking to another man, appellant entered the cafe. He had been passing to and fro in front of the cafe for some little time previously, and each time he passed he looked into the cafe.

When he entered he stopped at a stool to the rear of an opening between the front and rear counters. He interrupted the conversation between deceased and the

man with whom deceased was talking with a vile epithet referring to the Greek nationality of the deceased. The deceased slapped appellant. Appellant then stepped into a passage between the two counters and drew a .45 caliber revolver. He had some trouble getting the gun out of his pocket into a position to shoot. He shot deceased twice. One of the bullets pierced the lung and the other entered his body, breaking the right collar bone, and passed out through the back. The bullet which pierced the lung caused instant death. After firing the first two shots, appellant fired two more bullets at the body lying prone and dead upon the floor.

Appellant then went out the front door of the cafe. There was testimony by two witnesses to the effect that appellant had made threats against persons of Greek nationality in general and the deceased in particular.

Appellant testified that, in the previous March, he had been in the cafe, had been overcharged for a meal and resolved never to go in it again. On August 12 he had obtained employment in a logging camp, and to raise some extra money desired to pawn his revolver. His room in a hotel was just over the cafe owned by the deceased. Appellant had come down stairs intending to go into a second-hand store adjoining the cafe to pawn the revolver, but instead of turning to the left to go into the pawn shop, he turned to the right and went into the cafe by mistake; that when he discovered his mistake he did not want to go out of the cafe without ordering something because that would look cheap, and that he sat on a stool at the rear of the counter and asked for service; that the deceased came up to him, called him a vile name, spat in his face and commenced to strike him with his fists; that appellant went between the two counters, saw some bright object in

front of deceased and drew his gun and started to shoot.

On cross-examination by appellant of a young lady witness for the prosecution, it was elicited that she had known deceased about two years and that he had the reputation of being quarrelsome and vicious, which she had heard from many sources.

A witness for the state testified that he saw appellant, five or ten minutes before the shooting, pass a pool hall before which the witness was sitting. He was allowed to testify that he and appellant had a conversation at that time referring to a little dog which the witness was holding at the time. Appellant started to pet the dog, whereupon the dog snarled at him, and upon trying again to pet it, the dog snapped at appellant, upon which appellant asked the witness if the dog was an Irish or Greek dog. The witness answered that he did not know. Appellant tried to pet it again, the dog snapped at him again, and appellant then said, ''I believe I will kill that dog.'' He reached back in his hip pocket, and then turned around and walked away. Appellant moved to strike the testimony relating to the statements concerning the dog, which motion was denied.

Appellant contends that the testimony should have been stricken as incompetent and irrelevant, and as highly prejudicial.

The obvious purpose of the evidence was to show that appellant was armed and that he entertained a great animosity toward anything Greek. It also tended to slightly corroborate the testimony of that witness and another that appellant had a great hostility against the deceased and people of his nationality. The incident, having occurred so short a time before the shooting of deceased, would have the natural tendency of showing the animus of appellant toward the deceased

and his race. For these reasons, the testimony was not incompetent or irrelevant.

- ■ Appellant next complains that the court erred in allowing the introduction of evidence of the general reputation of the deceased as being a peaceful and law-abiding citizen.

This evidence was admitted by the court, in rebuttal by the state, because of the fact that appellant had opened the question of reputation by eliciting testimony, heretofore recited, as to deceased being quarrelsome and vicious.

"The prosecution is not allowed to prove that the deceased was a quiet, orderly citizen, nor is the prisoner allowed to prove that he was a violent and dangerous man. . . . But the rule is otherwise where the plea of self-defense is interposed, and the evidence before the jury leaves it in doubt whether the deceased was the aggressor, or where the circumstances attending the homicide render it doubtful or equivocal whether the defendant was justified in believing himself in imminent danger at the hands of deceased. In these cases it is competent for the defense to prove that the deceased was a violent, quarrelsome and dangerous person. . . . The character of the deceased is presumed to have been quiet and peaceable, and until it is attacked by the defense it may not be made the subject of proof by the prosecution. Where, however, the state (sic) makes an attack on the deceased's character, the prosecution in rebuttal may show that it was quiet and peaceable." 13 R. C. L. 916-917.

The above rule has, in effect, been approved by this court in *State v. Eddon,* 8 Wash. 292, 36 Pac. 139. That rule has also been approved in *De Woody v. State,* 21 Ariz. 613, 193 Pac. 299, and *State v. Todd,* 28 N. M. 518, 214 Pac. 899.

We are satisfied that the *Eddon* case followed the correct rule and the great weight of authority, as was

admitted by two dissenters in that case. We must therefore determine this contention against appellant.

■ Appellant further contends that his cross-examination of one of the character witnesses for the state as to the reputation of the deceased was improperly limited, in that the court refused to permit cross-examination of this witness concerning one specific offense of knowledge only by reading in the paper of the commission of an offense of violating the liquor law by the deceased.

There was no abuse of discretion in so limiting the cross-examination of that witness by appellant.

■ Appellant's next contention is that his motion for a new trial should have been granted: First, because of misconduct on behalf of counsel for the state, duly objected to by appellant; second, because of errors of law in the instructions of the court; and third, because the evidence was not sufficient to convict of murder in the first degree.

After an examination of the argument of the prosecuting attorney referred to by appellant, we can see nothing more to it than that he was drawing his inferences from evidence that was before the jury, and as to the credibility of certain witnesses. This was permissible, exactly as the same would be permissible on the part of counsel for appellant, providing always the argument and statements are based upon evidence in the record and contain no other improprieties or personalities.

There was nothing in the argument of counsel for the state that constituted in the remotest degree misconduct.

As to the claim of errors of law in the instruction of the court, it is asserted that a certain instruction, No. 14, as given by the trial court was error.

Although there is no exception whatever in the record to the instruction complained of, this being a case of first degree murder we have given it consideration, and conclude that it and the next following instruction, No. 15, together stated the law correctly where the defense is self-defense, under the cases cited by appellant, *State v. Churchill,* 52 Wash. 210, 100 Pac. 309, and *State v. Tyree,* 143 Wash. 313, 255 Pac. 382.

In instruction No. 15, the jury were charged that the action of appellant was justified, if in all the circumstances he honestly believed and had reasonable grounds to believe such killing to be necessary to save his own life, or to protect him from great bodily harm.

The evidence in this case on behalf of the state was competent and ample, if believed by the jury, as their verdict shows was the case, to convict appellant of murder in the first degree. An examination of the record discloses that appellant had a fair trial, free from prejudicial error.

The judgment is affirmed.

TOLMAN, C. J., MAIN, BEALS, and MILLARD, JJ., concur.