[No. 44193.    En Banc.    December 23, 1976.]

GERALD S. JOHNSON, *Respondent*, v. CHARLES MORRIS *as Secretary of the Department of Social and Health Services, Petitioner.*

*Slade Gorton, Attorney General,* and *Thomas W. Hayton* and *Nate D. Mannakee, Assistants,* for petitioner.

*Laurel Smith* and *Richard P. Blumberg,* for respondent.

HUNTER, J.—A writ of habeas corpus was issued by the Superior Court for Thurston County to the Secretary of the State Department of Social and Health Services (DSHS) for the release of respondent juvenile, Gerald S. Johnson. DSHS petitioned this court for a writ of certiorari for review of the trial court's finding that the juvenile court jurisdiction statute, RCW 13.04.260,[1] by which DSHS extended respondent's commitment past his 18th birthday, was ex post facto as applied to respondent.

We agree that respondent's detention under RCW 13.04.260 violated the provisions against ex post facto laws contained in both article 1, section 23, of our state constitution, and U.S. Const. art. 1, § 9. The action of the trial court is affirmed.

The facts of the case are simple, but the chronology must be borne in mind. Respondent (defendant) was twice adjudicated a delinquent in January and November of 1974. In

---

[1]RCW 13.04.260 provides:

"In no case shall a delinquent juvenile be committed by the juvenile court to the department of social and health services for placement in a juvenile correctional institution beyond the child's twenty-first birthday. A delinquent juvenile shall be under the jurisdiction of the juvenile court or the authority of the department of social and health services beyond the child's eighteenth birthday only if the juvenile court has, prior to the juvenile's eighteenth birthday, found the juvenile to be delinquent and has extended the jurisdiction beyond the child's eighteenth birthday by written order setting forth its reasons therefor.

"In no event shall the juvenile court have authority to extend jurisdiction over any delinquent juvenile beyond the juvenile's twenty-first birthday."

April of 1975, he was committed by the King County Juvenile Court to DSHS, petitioner on appeal. This original commitment was effective until respondent's 18th birthday. Just prior to his birthday in August 1975, the juvenile court extended jurisdiction over the respondent for another year, until his 19th birthday. This extension of jurisdiction was pursuant to RCW 13.04.260, which had been enacted 2 months before in June 1975. An intervening fact which will be discussed at length was this court's decision in *In re Carson*, 84 Wn.2d 969, 530 P.2d 331 (1975).

The ex post facto statute, RCW 13.04.260, provides that the juvenile court can extend jurisdiction over juvenile delinquents past the age of 18, up to the age of 21. It was enacted soon after this court held that the old jurisdiction statute, RCW 13.04.095,[2] did not give the juvenile court

[2]RCW 13.04.095 provided:

"When any child shall be found to be delinquent or dependent, within the meaning of this chapter, the court shall make such order for the care, custody, or commitment of the child as the child's welfare in the interest of the state require. Subject to further order, the court may commit the child:

"(1) To the care of such child's parents, subject to supervision of the probation officer; or

"(2) To the custody of a probation officer, subject to such conditions as the judge may impose; or

"(3) To a reputable citizen or association able and willing to receive and care for such child; or

"(4) To an appropriate private agency authorized to care for children; or

"(5) To the department of public assistance; or

"(6) To the department of institutions if the court finds such child to be delinquent, or a dependent child whose dependency arises from incorrigibility as defined by RCW 13.04.010 (7).

"*In no case shall a child be committed beyond the age of twenty-one years.* A child committed to the department of institutions shall be subject to the supervision and control thereof and the department shall have the power to parole such child under such conditions as may be prescribed.

"The department of institutions shall have the power to discharge such child from custody, and the court shall have the power to rescind the commitment of such child, whenever his or her reformation shall be deemed complete.

"The court shall rescind the commitment of any dependent child who was, prior to March 21, 1967, committed to the department of

power over anyone past 18 years of age. *In re Carson, supra.*

In *Carson* we construed RCW 13.04.095 in light of the 18-year-old general age of majority statute enacted in 1971, RCW 26.28.010, and found that juvenile court commitment power was coterminous with a child's minority. Since the age of majority was 18 for all purposes "[e]xcept as otherwise specifically provided for by law" (RCW 26.28.010), we examined RCW 13.04.095, which predated the 1971 age of majority statute, and found that it did not provide a specific enough exception. We held the "negative language is too remote in terms of time of enactment and viability to be considered as an exception . . . to the main thrust of RCW 26.28.010." *In re Carson, supra* at 973.

The legislature subsequently manifested the intent to vest juvenile courts with jurisdiction over delinquents up to age 21 by enacting RCW 13.04.260 in June 1975. This was after *Carson*, and more importantly, after the respondent's delinquent acts and original commitment.

Petitioner first contends that RCW 13.04.260 was intended to interpret RCW 13.04.095, not to change existing law. In other words, RCW 13.04.260 was simply a clarification of the legislature's original intent and not an amendment to the juvenile code. Petitioner asserts that, as a clarification, RCW 13.04.260 dates from the effective date of RCW 13.04.095. Petitioner cites cases that have held a statute which clarifies an existing statute effective from the date of the original statute, even in the absence of a provision for retroactivity. *Carpenter v. Butler*, 32 Wn.2d 371, 201 P.2d 704 (1949); *Bowen v. Statewide City Employees Retirement Sys.*, 72 Wn.2d 397, 433 P.2d 150 (1967); *People v. Sobiek*, 30 Cal. App. 3d 458, 106 Cal. Rptr. 519 (1973).

However, petitioner's argument ignores the fact that in this case the existing law *as interpreted by this court,* was

institutions unless such child is incorrigible or delinquent within the meaning of this chapter and the department of institutions shall return the child forthwith to the committing court for such action: *Provided,* That the court may commit such dependent child as otherwise provided in this chapter." (Italics ours.)

that juvenile court jurisdiction was coterminous with minority. If the legislature desired to change the existing law, to extend jurisdiction to age 21, it must enact legislation providing a specific exception to the age of majority statute, which would necessarily be an amendment to the juvenile law.

Petitioner cites no authority for the proposition that the legislature is empowered to retroactively "clarify" an existing statute, when that clarification contravenes the construction placed upon that statute by this court. Such a proposition is disturbing in that it would effectively be giving license to the legislature to overrule this court, raising separation of powers problems.[3]

However, we need not decide here whether the legislature has such authority. We conclude that RCW 13.04.260 is an amendment to the state juvenile code since the language and scope of the statute is more restrictive than RCW 13.04.095.

RCW 13.04.260 addresses itself solely to jurisdiction, exclusively over *juvenile delinquents.* RCW 13.04.095 had wider scope in that it provided for jurisdiction over dependent incorrigibles as well, and set out other guidelines in addition to a statement of jurisdiction.

There is a presumption, well established, that a new legislative enactment is an amendment rather than a clarification of existing law. *Bowen v. Statewide City Employees Retirement Sys., supra; Fisher Flouring Mills Co. v. State,* 35 Wn.2d 482, 213 P.2d 938 (1950). This presumption may be rebutted if surrounding circumstances indicate that the legislature intended merely to interpret an original act, *Fisher Flouring Mills Co. v. State, supra* at 490. Surrounding circumstances in the instant case *support* the presumption of an amendment rather than rebut it. RCW 13.04.260 was enacted to provide the specific statutory exception to

---

[3]*See United States v. Gilmore,* 75 U.S. (8 Wall.) 330, 19 L. Ed. 396 (1869); *Peony Park, Inc. v. O'Malley,* 121 F. Supp. 690 (1954), *aff'd,* 223 F.2d 668 (1955); *United States v. Stafoff,* 260 U.S. 477, 67 L. Ed. 358, 43 S. Ct. 197 (1923); 2 C. Sands, *Statutes and Statutory Constructions* § 27.04, at 313, 314 (4th ed. 1973).

the general 18-year-old age of majority statute, as was mandated by our decision in *Carson*. It provided an exception only for delinquents. It did not touch upon other facets of the old jurisdiction statute. The necessary conclusion is that RCW 13.04.260 is effective from the date of enactment in accordance with the law in this state that a legislative enactment will not be held to apply retrospectively unless that is clearly the legislative intent. *Baker v. Baker*, 80 Wn.2d 736, 498 P.2d 315 (1972), and cases cited therein.

Next we deal with the issue of whether the retroactive application of the juvenile court's extension of jurisdiction statute is ex post facto in its effect on respondent.

▋ A statute is ex post facto when it inflicts a greater punishment for the commission of a crime than that which was originally annexed to the crime when committed. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L. Ed. 648 (1796). At the time of respondent's original commitment in April of 1975, *Carson* was the effective law as to delinquents and incorrigibles. Hence, he was subject to confinement only until his 18th birthday.

We note that it is the law on the date of a defendant's criminal *act*, not on the date of his trial or original commitment, that is significant to an ex post facto determination. *Kring v. Missouri*, 107 U.S. 221, 27 L. Ed. 506, 2 S. Ct. 443 (1882). Respondent's acts were committed in 1974, prior to the *Carson* decision, but after the enactment of the 18-year-old age of majority statute. The threshold issue, not briefed by either party, is whether *Carson* speaks from the date of decision or from the date of enactment of RCW 26.28.010.

▋ The age of majority statute was effective in 1971, and since we are construing the effect of that statute on the juvenile jurisdiction statute, the construction placed upon the latter (RCW 13.04.095) is effective from 1971. It is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it. *In re Elliott's Estate*, 22 Wn.2d 334, 156 P.2d 427, 157

A.L.R. 1335 (1945); *Yakima Valley Bank & Trust Co. v. Yakima County*, 149 Wash. 552, 271 P. 820 (1928). In other words, there is no "retroactive" effect of the court's construction of a statute; rather, once the court has determined the meaning, *that is what the statute has meant since its enactment*. In this case, where we have construed the effect of one statute on another, the construction of RCW 13.04.095 is effective from the date of enactment of the later statute, RCW 26.28.010. Therefore, although not yet enunciated, the law at the time respondent committed his criminal acts was that juvenile court jurisdiction ceased at age 18, not 21.

Petitioner contends that even if RCW 13.04.260 is amendatory and was applied retroactively in this case, it is not ex post facto because the extension of jurisdiction was not intended to punish this juvenile but rather to provide further drug/alcohol counseling and treatment. Petitioner asserts that juvenile court jurisdiction is civil, and that the statute is remedial in nature, rather than penal.

It is true that the ex post facto prohibition applies only to laws respecting criminal punishment. *Johannessen v. United States*, 225 U.S. 227, 56 L. Ed. 1066, 32 S. Ct. 613 (1912); *State ex rel. Hagen v. Superior Court*, 139 Wash. 454, 247 P. 942 (1926). And the record before us reflects that respondent was subject to the continued jurisdiction of the juvenile court for rehabilitative purposes.

We are mindful that the intent of the juvenile code, as set out in RCW 13.04.140, is beneficent, and further, that juvenile court custody has been viewed as advantageous to a child who otherwise would be processed through adult criminal proceedings. *See In re Harbert*, 85 Wn.2d 719, 538 P.2d 1212 (1975), and *State v. Augustine*, 197 Kan. 207, 416 P.2d 281 (1966). We find the following much quoted language from *In re Lundy*, 82 Wash. 148, 151, 143 P. 885 (1914), still true today:

> The act, in its application to the delinquent, is not punitive in its nature or purpose. The policy underlying this law is protection, not punishment. Its purpose is not to restrain criminals to the end that society may be pro-

tected and the criminal perchance reformed; it is to prevent the making of criminals. Its operation is intended to check the criminal tendency in its inception, and protect the unformed character in the facile period from improper environment and influences. In short, its motive is to give to the weak and immature a fair fighting chance for the development of the elements of honesty, sobriety and virtue essential to good citizenship. While no person, whether minor or adult, should ever be restrained of liberty without due process, and in that respect the statute must be construed with all the strictness of a criminal law. (*Weber v. Doust*, 81 Wash. 668, 143 Pac. 148) in other respects it should be liberally construed to the end that its manifest beneficent purpose may be effectuated to the fullest extent compatible with its terms. The act, taken as a whole, will admit of no other view.

However, where a restraint of liberty is involved, the fact of the beneficent, civil nature of the juvenile code loses its significance. Although the proceedings may be deemed "civil," "rehabilitative," or "remedial," they are subject to the same strict constitutional scrutiny they would be if they were deemed "criminal" proceedings. *See In re Quesnell*, 83 Wn.2d 224, 229, 517 P.2d 568 (1973), quoting from *In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967), as follows:

> To hold otherwise would be to disregard substance because of the feeble enticement of the "civil" label-of-convenience which has been attached to juvenile proceedings. . . . For this purpose, at least, commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called "criminal" or "civil."

Our reasoning leads us to the conclusion that the involuntary incarceration of respondent, although probably in his best interest, was punishment within the purview of the ex post facto prohibition.

Finally, petitioner incorrectly contends that *Carson*, which on its facts dealt with jurisdiction over an incorrigible dependent child, applied only to incorrigibles and not to delinquents. We construed the *language* of the statute (RCW 13.04.095); since the statute itself was addressed to

both incorrigibles and delinquents, it follows, a priori, that the holding applied to both. The wording in the opinion is clear:

> On balance, then, we believe that because there is no explicit statutory provision to the contrary, we must hold that majority status is conferred at age 18 for purposes of juvenile court jurisdiction.

*In re Carson*, 84 Wn.2d 969, 974, 530 P.2d 331 (1975).

For all purposes then, juvenile court jurisdiction terminated at age 18, once the age of majority was lowered to 18. Once the new jurisdiction statute (RCW 13.04.260) was enacted, providing a specific legislative exception to the general age of majority, jurisdiction over juvenile delinquents was extended to age 21. Until the new statute providing for jurisdiction over incorrigibles (Laws of 1976, 2d Ex. Sess., ch. 71, p. 271) is effective in July 1977, *Carson* remains the law as to incorrigibles.

The effect of this decision, although moot as to this respondent,[4] reaches all delinquents still in the custody of DSHS who are: (1) past 18 years of age; and (2) were originally committed to DSHS after the new age of majority statute was enacted in 1971, and before the effective date of RCW 13.04.260. It also reaches incorrigibles who are (1) over 18 years of age; and (2) were originally committed to DSHS after the age of majority statute, RCW 26.28.010.

We do not find it necessary to reach respondent's contention that there was error in the trial court's refusal to certify a CR 23(b)(1) class action. For the few juveniles meeting the descriptions set out above, we assume DSHS will abide by this ruling and effectuate their release. If there is error, it is harmless.

---

[4]The order extending commitment of respondent has expired, thus making the order that granted the writ of habeas corpus moot. Neither side has raised the issue of mootness, but this case concerns a matter of continuing and substantial public interest as evidenced by the attempt to certify this case as a class action. Therefore, it is proper for the court to exercise its discretion to retain and decide the present case. *See Riggins v. Housing Authority*, 87 Wn.2d 97, 98 n.1, 549 P.2d 480 (1976).

■ Nor do we reach respondent's contention that RCW 13.04.260 is unconstitutionally vague. Having decided that the above statute was not applicable to respondent, its constitutionality is not a proper issue for our determination in this case. As a general rule, this court will decide only such questions as are necessary for a determination of the case presented for consideration, and will not render decisions in advance of such necessity, particularly when the question is a constitutional one, or involves the construction of a statute. *See generally* 21 C.J.S. *Courts* § 182 (1940).

Further, it should be recognized that since the case is moot as to respondent, he has no standing to raise these issues. ROA I-57(g)(6) states that respondents may, in responding to arguments raised by petitioner, raise as issues any claimed errors by the trial court which, *"if repeated upon a new trial,"* would constitute error *"prejudicial to respondents."* (Italics ours.) Regardless of how this case was decided, there would not be a new trial, nor would respondent herein be prejudiced in any way. This decision was rendered solely to clarify the law as to juvenile court jurisdiction, and to effectuate the release of those juveniles improperly in custody of DSHS.

The judgment is affirmed.

STAFFORD, C.J., and ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.