[No. 50532–2.   En Banc.   June 13, 1985.]

THE STATE OF WASHINGTON, *Appellant,* v. DARRIN ANTHONY EDWARDS, ET AL, *Respondents.*

---

64

*Norm Maleng, Prosecuting Attorney, Robert S. Lasnik, Senior Deputy,* and *Michael Schwartz, Deputy,* for appellant.

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for respondent Edwards.

*Mark Podrasky,* for respondent Greene.

*Jack Steinberg* (of *Steinberg & Steinberg*), for respondent Gant.

UTTER, J.—The State appeals dismissal by the trial court of murder charges against Darrin Edwards, Brian Greene, and Moody Gant stemming from the robbery and shooting of Dennis Laramie in March 1982. At trial, the court held that murder charges could not be filed because the common law rule in effect at the time of the shooting required death to occur within a year and a day of the assault. As a consequence, although prior to the death of the victim the law was changed to permit murder charges if death occurred within 3 years and a day, the court held application of the extended time period would violate the constitutional prohibition against ex post facto legislation. Although we are repulsed, as is everyone connected with the trial of this case, by the senseless shooting of the victim, we must affirm the trial judge. He is correct on both issues inasmuch as the federal and state constitutions clearly prohibit ex post facto legislation of this kind. Consequently, the earlier convictions of the defendants for robbery, assault and attempted murder remain in effect. Defendants cross–appeal other rulings of the trial court which we do not reach since our resolution of the ex post facto issue requires dismissal of the murder charges.

On March 2, 1982, Dennis Laramie, a service station attendant, was shot in the face during the course of a robbery. As a result of the shooting, he lapsed into a coma and was placed on life support systems. A year and 8 months later he died.

Edwards, Greene and Gant were arrested and charged

with various crimes relating to the robbery and shooting. On May 21, 1982, Gant pleaded guilty to first degree assault and first degree robbery and was sentenced to two 20-year prison terms to run concurrently. On June 2, 1982, Greene and Edwards were tried by a jury. Greene was convicted of first degree robbery and first degree assault and was sentenced to two life terms. Edwards was convicted of first degree robbery, first degree assault, and first degree attempted murder. He was sentenced to three life terms to run concurrently and to a life term to run consecutively on another robbery charge.

The King County Prosecutor's office decided at the time of trial the three defendants could not be charged with murder unless Laramie died within 1 year and a day of the shooting. Accordingly, after the trial and convictions of Greene and Edwards, the prosecutor's office, the Laramie family, and the Renton Police Department lobbied in support of the "Laramie Bill," House Bill 147, introduced in the 1983 regular session of the Washington State Legislature. The Laramie Bill, an amendment to the homicide statute, RCW 9A.32.010, provided that murder charges may be filed if a victim dies within 3 years and a day of the criminal act. The amendment was passed by the Legislature and became effective on February 24, 1983.

Dennis Laramie died more than a year and a day after, but within 3 years and a day of, the assault. After his death, the State charged Edwards with first degree aggravated murder, Greene with first degree murder, and Gant with second degree murder. All three pleaded not guilty and moved to dismiss the murder charges, contending the legislation constituted an ex post facto law and a bill of attainder. Edwards further claimed it would subject him to double jeopardy.

The court held that trial of Edwards for murder would not subject him to double jeopardy since an additional fact necessary to sustain the new charge, the death of the victim, had not occurred at the time of his conviction for attempted murder. The court further held application of

the amendment to the defendants would not constitute a bill of attainder. The court concluded, however, since the common law "year and a day" rule was in effect on the day of the shooting, application of the extended time period to the defendants would amount to constitutionally prohibited ex post facto legislation. Consequently, the trial court dismissed the murder charges against all three defendants.

As a preliminary matter, defendants request dismissal of the State's appeal since the State failed to separately assign error to the trial court's order dismissing the information. We will not dismiss the appeal, however, inasmuch as the issues before the court in the instant case, if sustained, require dismissal of the charges.

I

Prior to 1970, the homicide statute simply provided "[h]omicide is the killing of a human being by the act, procurement or omission of another . . ." Laws of 1909, ch. 249, § 138. In 1970, the Legislature amended the law to provide "[h]omicide is the killing of a human being . . . death occurring within three years and a day . . ." RCW 9.48.010. In 1975, the Legislature repealed RCW 9.48.010, along with many other criminal statutes, and, as part of a new criminal code, enacted RCW 9A.32.010 which provides "[h]omicide is the killing of a human being by the act, procurement or omission of another . . ." At the same time, the Legislature also enacted RCW 9A.04.060 which provides that, unless otherwise stated, the common law shall supplement all penal statutes, if not repugnant to the statutes or the constitution.

At the time of enactment of the new criminal code, including RCW 9A.32.010 and 9A.04.060, in 1975, the Legislature determined that the effective date of the new code would be July 1, 1976. This gave the Legislature ample opportunity to review the legislation before implementation. The State urges that the Legislature inadvertently omitted the 3 year and a day provision of the 1970 law when drafting the new homicide statute. However, if

failure to include the 3 year and a day limit was inadvertent, there was ample opportunity to correct the error prior to the effective date of the law. Because the Legislature left the provision as originally enacted in 1975, it is impossible to infer that the omission was inadvertent. Consequently, we cannot read the 3 year and a day provision into RCW 9A.32.010. "In construing a statute, it is safer always not to add to, or subtract from, the language of the statute unless imperatively required to make it . . . rational . . ." *State v. Taylor,* 97 Wn.2d 724, 728, 649 P.2d 633 (1982); *McKay v. Department of Labor & Indus.,* 180 Wash. 191, 194, 39 P.2d 997, 98 A.L.R. 990 (1934). Moreover, "[i]n construing statutes which re–enact, with certain changes, or repeal other statutes, or which contain revisions or codification of earlier laws, resort to repealed and superseded statutes may be had, and is of great importance in ascertaining the intention of the legislature, for, where a material change is made in the wording of a statute, a change in legislative purpose must be presumed." *Graffell v. Honeysuckle,* 30 Wn.2d 390, 399, 191 P.2d 858 (1948). Rules of statutory construction and the history of the legislation compel a holding that the common law was revived when the Legislature enacted RCW 9A.32.010 without a limit on the time within which death must occur.

## II

The common law rule with regard to homicide is that death must occur within a year and a day of infliction of the mortal blow. *State v. Spadoni,* 137 Wash. 684, 243 P. 854 (1926). The effect of the common law rule is to bar indictment for murder unless death occurs within a year and a day of the mortal blow. *Spadoni; Commonwealth v. Ladd,* 402 Pa. 164, 166 A.2d 501 (1960); *State v. Young,* 77 N.J. 245, 390 A.2d 556 (1978). There is, however, disagreement as to whether the rule is one of evidence, or procedure, or is an element of the crime of murder. Resolution of this conflict is critical to our determination of how to apply changes to the rule. Several courts which have found the

rule either procedural or evidentiary have felt free to abolish the rule retroactively. *Commonwealth v. Ladd, supra; People v. Snipe,* 25 Cal. App. 3d 742, 102 Cal. Rptr. 6 (1972). Other courts have found the rule a constituent element of the crime of murder and have refused to abrogate the rule retroactively, preferring to do so prospectively only, or to leave a change to the Legislature. *State v. Young, supra; People v. Stevenson,* 416 Mich. 383, 331 N.W.2d 143 (1982).

Originally, the common law rule arose because medical science was unable to definitively prove an injury which occurred a year before death was the proximate cause of the death. The rule "renders conclusive the absence of culpability for murder once the period of a year and a day has passed." *State v. Young,* 77 N.J. at 252. *See also People v. Stevenson, supra.*

Most courts which have recently analyzed the rule have found it to be an anachronism. *Commonwealth v. Ladd, supra; State v. Young, supra; People v. Stevenson, supra; Commonwealth v. Lewis,* 381 Mass. 411, 409 N.E.2d 771 (1980). We agree. Medical science has progressed to such a degree it makes little sense to have a rule which requires death to occur within a particular time to resolve issues of proof. In light of existing scientific knowledge, it would make sense for a modern rule to be based strictly on proof of causation. However, because this court has previously ruled on the issue we are not free to decide what the rule *should* have been as of the critical time periods in this case.

■ Washington is one of several states to recognize the common law year and a day rule as a constituent element of the crime of murder. *State v. Spadoni, supra. See also State v. Young, supra; People v. Stevenson, supra.* In *Spadoni,* although death had occurred within hours of the shooting, murder charges were not filed for 4 years. The court reversed the subsequent conviction because the indictment did not charge that death had occurred within a year and a day of the crime. "We conclude, therefore, that it is the [common law] rule that death must ensue within a

year and a day from the infliction of a mortal wound in order to constitute criminal homicide, and that the fact must be alleged in the indictment or information in order that a crime be stated." *State v. Spadoni,* 137 Wash. at 689. Later cases upholding indictments which did not include time of death did not change or abrogate the common law rule since in each case the indictment was brought within a year and a day of the assault. *State v. Stone,* 169 Wash. 233, 13 P.2d 427 (1932); *State v. Hartley,* 25 Wn.2d 211, 170 P.2d 333 (1946); *State v. Odell,* 38 Wn.2d 4, 227 P.2d 710 (1951).

### III

Inasmuch as the common law year and a day rule was in effect at the time of the shooting and was a constituent element of the crime of homicide, amendment of the homicide statute to permit charges to be brought if death occurs within 3 years and a day raises the issue of ex post facto legislation. "[I]t is the law on the date of a defendant's criminal *act* . . . that is significant to an ex post facto determination." *Johnson v. Morris,* 87 Wn.2d 922, 927, 557 P.2d 1299 (1976). The State urges the court to permit the prosecution to charge pursuant to the amendment since it took effect within a year and a day of the assault. Defendants claim that the change affects the law as it relates to them on the day of the shooting and is therefore unconstitutional.

Prohibition against ex post facto legislation is found both in U.S. Const. art. 1, § 9 and Const. art. 1, § 23. The early United States Supreme Court decision of *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L. Ed. 648 (1798) established the framework for ex post facto analysis. A portion of the *Calder* analysis has already been adopted by this court and applied to the Washington constitutional ex post facto prohibition. *Johnson v. Morris,* 87 Wn.2d at 927. A law violates the ex post facto prohibition if it aggravates a crime or makes it greater than it was when committed; permits imposition of a different or more severe punishment than

was permissible when the crime was committed; or, changes the legal rules to permit less or different testimony to convict the offender than was required when the crime was committed. *Calder v. Bull, supra* at 390. Legislation further violates the provision if it is made retroactive and disadvantages the offender. *Weaver v. Graham,* 450 U.S. 24, 29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981). Finding a violation turns upon whether the law changes legal consequences of acts completed before its effective date. *Weaver v. Graham,* 450 U.S. at 31.

The State contends that the change is evidentiary, rather than substantive, and is similar to a change in witness competency. Even were this true, it would be prohibited if it affected a substantial right of the defendants. *Kring v. Missouri,* 107 U.S. 221, 27 L. Ed. 506, 2 S. Ct. 443 (1882); *Seattle v. Hesler,* 98 Wn.2d 73, 82, 653 P.2d 631 (1982). However, the amendment at issue differs significantly from a change in witness competency. Competency involves a determination of who may testify as to certain facts or events, not what may actually be said. "[A]lterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt, but—leav[e] untouched the . . . amount or degree of proof essential to conviction . . ." do not violate the ex post facto provision. *Hopt v. Utah,* 110 U.S. 574, 590, 28 L. Ed. 262, 4 S. Ct. 202 (1884). The amendment at issue changes ingredients of the offense and is therefore markedly different than a change in witness competency.

Similarly, a change regarding when death must occur in relation to the assault differs significantly from a change in the statute of limitations since a statute of limitations determines the time within which a case may be brought. The State may bring murder charges at any time, assuming death occurred within the statutorily prescribed period. RCW 9A.04.080. A New York court upheld a statute of limitations change against an ex post facto attack because it found the change passed the *Calder v. Bull, supra,* test. *People v. Pfitzmayer,* 72 Misc. 2d 739, 741, 340 N.Y.S.2d

85, 87 (1972).

The amendment cannot pass the *Calder v. Bull, supra,* test. *State v. Spadoni, supra,* found the year and a day rule a constituent element of the crime of murder. Such a holding contradicts the State's assertion that the amendment is merely a procedural or evidentiary change. The amendment escalates and aggravates the crime committed by the defendants. When the defendants shot and robbed Dennis Laramie, the State could charge murder only if he died within a year and a day. After the amendment, the State could charge murder if death occurred within 3 years and a day.

An offense not chargeable as murder when committed became murder. The consequences of a conviction for murder are potentially far more severe than are the consequences of a conviction for assault. As a result, the amendment permits the infliction of greater punishment than could have been imposed when the crime was committed. Furthermore, the amendment alters the rules of evidence by receiving different testimony than required or permitted at the time of the crime since the State may prove different facts than it had to prove when the crime was committed. The law in 1982 required proof the victim died within a year and a day of the assault; the amendment requires proof he died within 3 years and a day. Not only may the State prove different facts, but those new facts are "ultimate facts necessary to establish guilt," *Hopt v. Utah,* 110 U.S. at 590. The change significantly disadvantages the defendants and anyone else in their situation. *See Weaver v. Graham,* 450 U.S. at 35–36. There is no dispute the amendment changed the legal consequence of an act which was completed before its effective date. Such an enactment violates the state and federal constitutional prohibitions against ex post facto legislation.

The amendment is a violation of the state and federal constitutional prohibitions against ex post facto legislation and as such it may not be used to charge Edwards, Greene and Gant with murder. Because our decision requires dis-

missal of the murder charges, we do not reach the question of whether it also constitutes a violation of the prohibitions against bill of attainder and double jeopardy.

DOLLIVER, C.J., BRACHTENBACH, DORE, PEARSON, GOOD-LOE, and DURHAM, JJ., and BAKER, J. Pro Tem., concur.