IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79358-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| OKLER, MICHAEL CRAIG, | ) | |
| DOB: 02/15/1960, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Michael Craig Okler challenges the condition that he register as a sex offender following his 1990 convictions for child molestation as unconstitutional because it violates ex post facto prohibitions under the state and federal constitutions. Okler concedes his argument contradicts existing case law but asks us to determine whether we should interpret the Washington State Constitution's ex post facto provision independently of its federal counterpart under State v. Gunwall.[1] We conclude that the Washington State Constitution provision does not extend broader rights than its counterpart in the United States Constitution. Because existing case law establishes that retroactive application of sex-offender registration statutes does not violate ex post facto restrictions, we affirm Okler's conviction for failure to register as a sex offender but remand to

_____

[1] State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986).

Citations and pin cites are based on the Westlaw online version of the cited material.

strike community custody supervision fees and nonrestitution interest from his judgment and sentence.

## FACTS

In September 1990, Okler pleaded guilty to three counts of first degree child molestation for acts that occurred in 1989. Okler successfully completed a special sex-offender sentencing alternative and has no subsequent criminal convictions for sex-related offenses.

Seven months earlier in February 1990, Washington had enacted a statute requiring convicted sex offenders to register with the sheriff of the county in which they reside. LAWS OF 1990, ch. 3, §§ 401-409; see RCW 9A.44.130(1)(a). A 1999 amendment to the statute requires offenders without a fixed address to report weekly, in person, to the sheriff of the county of registration. LAWS OF 1999, 1st Spec. Sess., ch. 6, § 2; see RCW 9A.44.130(6)(b). Okler's 1990 judgment and sentence required him to register as a sex offender "for 15 years after the last date of release from confinement." Okler registered as "not having a fixed residence."

In January 2017, the State charged Okler with failing to register as a sex offender while on community custody because he failed to report in person to the sheriff's office "on or about the weeks of June 8, 2016 through July 8, 2016."[2] Okler pleaded guilty as charged.

At sentencing, Okler requested an exceptional sentence downward because "physical and mental health conditions" affected his "capacity to

---

[2] Okler was convicted of failing to register in 2006 and 2010.

conform his conduct to the requirements of the law."[3]  The trial court denied his request for an exceptional sentence downward but sentenced Okler to 43 months in prison, the low end of the standard range.  The court determined that Okler was indigent and imposed the mandatory victim penalty assessment but waived all other discretionary legal financial obligations (LFOs).

Okler appeals his sentence.

ANALYSIS

Okler argues the retroactive application of the sex-offender registration statute[4] and its 1999 amendment[5] violates the prohibitions against ex post facto laws under our state constitution.[6]  He also challenges imposition of certain discretionary LFOs and raises several issues in his statement of additional grounds for review (SAG).

---

[3] A forensic psychological assessment showed that Okler has "significant" cognitive impairment.  He has a history of head injuries, chronic pain, and alcohol and drug use.

[4] RCW 9A.44.130-.140.

[5] RCW 9A.44.130(6)(b).

[6] In support of his claim, Okler moves to supplement the appellate record with his 1990 judgment and sentence showing that the acts leading to his 1990 convictions for child molestation occurred in "Summer-Fall, 1989."  Generally, an appellate court does not consider evidence that was not part of the trial court record.  State v. Curtiss, 161 Wn. App. 673, 703, 250 P.3d 496 (2011).  RAP 9.11(a) establishes six requirements a party must show to supplement the record on review.  We permit new evidence only if the party meets all six conditions.  Wash. Fed'n of State Emps., Council 28, AFL-CIO v. State, 99 Wn.2d 878, 884, 665 P.2d 1337 (1983).  But we also liberally interpret the RAP "to promote justice and facilitate the decision of cases on the merits."  RAP 1.2(a).  "Although RAP 1.2 does not provide a freestanding mechanism to admit new evidence, its direction to liberally read these procedural rules" should guide the interpretation of RAP 9.11.  Randy Reynolds & Assocs., Inc. dba Reynolds Real Estate v. Harmon, 193 Wn.2d 143, 154, 437 P.3d 677 (2019).  Without Okler's 1990 judgment and sentence, the record would support review of his challenge to the 1999 amendment to the sex-offender registration statute but would not support review of the 1990 statute itself.  In the interests of judicial economy, and to facilitate our decision on the merits, we grant Okler's motion to supplement the record.  See Wash. Fed'n of State Emps., 99 Wn.2d at 885-86.

Ex Post Facto Provisions

We presume a statute is constitutional, and the challenging party must prove it violates the constitution beyond a reasonable doubt. State v. Ward, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994).

> The ex post facto clauses of the federal and state constitutions forbid the State from enacting any law which imposes punishment for an act which was not punishable when committed or increases the quantum of punishment annexed to the crime when it was committed.

Ward, 123 Wn.2d at 496; U.S. CONST. art. I, § 10; WASH. CONST. art. I, § 23. A law violates the ex post facto clause if it is (1) substantive, rather than procedural; (2) retrospective; and (3) disadvantages the person affected by it. Ward, 123 Wn.2d at 498.

Washington Courts have addressed ex post facto challenges to RCW 9A.44.130 through .140 and the 1999 amendment to the statute. Those challenges withstood constitutional scrutiny under the federal and state constitutions. See Ward, 123 Wn.2d at 510-11 (requirement to register as a sex offender is regulatory rather than punitive); State v. Enquist, 163 Wn. App. 41, 49, 256 P.3d 1277 (2011) (Division Two of our court determined that the "inconvenience" of in-person registration is not punishment); State v. Boyd, 1 Wn. App. 2d 501, 507-13, 408 P.3d 362 (2017) (we determined weekly in-person check-in requirement is inconvenient but does not constitute punishment).

Ward, Enquist, and Boyd provide extensive ex post facto analyses of the 1990 sex-offender registration statute and its 1999 amendment. The cases presume that the statute is substantive and retrospective, note that the ex post facto analysis is the same for both the federal and state constitutions, and

examine the statute under a single standard—whether retroactive application "disadvantages" the defendant.  See Ward, 123 Wn.2d at 498, 496-97; Enquist, 163 Wn. App. at 46; Boyd, 1 Wn. App. 2d at 510, 507-08.

In Ward, the Washington Supreme Court explicitly adopted the federal interpretation of what it means to be disadvantaged—"the sole determination of whether a law is 'disadvantageous' is whether the law alters the standard of punishment which existed under prior law."  Ward, 123 Wn.2d at 498.  As noted above, our courts have concluded that the sex-offender registration statutes are regulatory rather than punitive and thus do not alter the standard of punishment. See Ward, 123 Wn.2d at 510-11; Enquist, 163 Wn. App. at 49; Boyd, 1 Wn. App. 2d at 513.  Because the statutes do not alter the standard of punishment, retroactive application does not violate the ex post facto clauses of the state and federal constitutions.  Ward, 123 Wn.2d at 511; Enquist, 163 Wn. App. at 49; Boyd, 1 Wn. App. 2d at 510, 513.  Okler acknowledges this precedent but asks us to examine separately the sex-offender registration statute and its 1999 amendment under the Washington State Constitution's ex post facto provision.

In State v. Gunwall, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986), the Washington Supreme Court established six nonexclusive criteria for considering whether to interpret our state constitution independently of federal guarantees— (1) the textual language of the state constitution, (2) significant differences in the texts of the parallel provisions of the state and federal constitutions, (3) state constitutional and common law history, (4) preexisting state law, (5) differences in structure between the state and federal constitutions, and (6) matters of

5

particular state interest or local concern. The fifth Gunwall factor "will always point toward pursuing an independent state constitutional analysis because the federal constitution is a grant of power from the states, while the state constitution represents a limitation of the State's power." State v. Young, 123 Wn.2d 173, 180, 867 P.2d 593 (1994).

Washington's ex post facto clause is found in the constitution's "Declaration of Rights" article and states, "No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed." WASH. CONST. art. I, § 23. It is nearly identical to the federal provision that states, in pertinent part, "No state shall . . . pass any bill of attainder . . . [or] ex post facto law." U.S. CONST. art. I, § 10. The federal clause in the United States Constitution appears in the article establishing the powers of states. The textual similarities in both provisions weigh against independent interpretation of the state provision under the first two Gunwall factors.

Okler argues that despite the similarity in language, we are free to interpret our state constitution's ex post facto provision separately from the federal provision. He asserts that "the meaning of a state constitutional provision does not change whenever the United States Supreme Court interprets an analogous federal provision." But as discussed below, an analysis of our legal history and preexisting case law shows that the Washington Supreme Court has opted to interpret our ex post facto provision consistent with that of its federal counterpart.

In the eighteenth century, the United States Supreme Court established that ex post facto analysis requires consideration of whether a statute "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed." Calder v. Bull, 3 U.S. 386, 390, 3 Dall. 386, 1 L. Ed. 648 (1798). A later decision broadened the definition of an ex post facto law to

> "one which, in its operation, makes that criminal which was not so at the time the action was performed, or which increases the punishment, or, in short, which, in relation to the offense or its consequences, alters the situation of a party to his disadvantage."

Kring v. Missouri, 107 U.S. 221, 228-29, 2 S. Ct. 443, 27 L. Ed. 506 (1883) (quoting United States v. Hall, 26 F. Cas. 84, 86, 2 Wash. C.C. 366 (1809)), overruled by Collins v. Youngblood, 497 U.S. 37, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990). The United States Supreme Court later concluded, "The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." Lindsey v. Washington, 301 U.S. 397, 401, 57 S. Ct. 797, 81 L. Ed. 1182 (1937).

The Washington Supreme Court adopted the analysis in Calder and applied it to our state's ex post facto prohibition. State v. Edwards, 104 Wn.2d 63, 70-71, 701 P.2d 508 (1985). A law violates the ex post facto prohibition if it "permits imposition of a different or more severe punishment than was permissible when the crime was committed." Edwards, 104 Wn.2d at 70-71; see State v. Handran, 113 Wn.2d 11, 14, 775 P.2d 453 (1989). But the court also concluded that "[l]egislation further violates the provision if it is made retroactive and disadvantages the offender. Edwards, 104 Wn.2d at 71. Despite this new

7

language, the court continued to focus on whether a statute increased

punishment:

> "[A]lterations which do not increase the punishment, nor change the ingredients of the offence [sic] or the ultimate facts necessary to establish guilt, but—leav[e] untouched the . . . amount or degree of proof essential to conviction . . ." do not violate the ex post facto provision.

Edwards, 104 Wn.2d at 71[7] (quoting Hopt v. Utah, 110 U.S. 574, 590, 4 S. Ct.

202, 28 L. Ed. 262 (1884)).

The focus on "punishment" permeates Washington's ex post facto cases.

See Johnson v. Morris, 87 Wn.2d 922, 927, 557 P.2d 1299 (1976) ("statute is ex

post facto when it inflicts a greater punishment for the commission of a crime

than that which was originally annexed to the crime when committed"); State v.

Henderson, 34 Wn. App. 865, 872, 664 P.2d 1291 (1983) (an ex post facto

statute inflicts greater punishment than originally annexed to the crime when

committed); In re Pers. Restraint Petition of Williams, 111 Wn.2d 353, 362-63,

759 P.2d 436 (1988) ("[e]x post facto concerns generally arise when a statute

criminalizes actions that were legal when performed or when the punishment for

a crime is increased beyond that in effect when the crime was committed"); State

v. Elliott, 114 Wn.2d 6, 18, 785 P.2d 440 (1990) (new law violates the prohibition

against ex post facto laws if it " 'permits imposition of a different or more severe

punishment than when the crime was committed' ") (quoting Handran, 113 Wn.2d

at 14).

---

[7] Alterations in original.

In Collins v. Youngblood, the United States Supreme Court overruled Kring and established that the inquiry on whether a statute violates ex post facto prohibitions is "not whether the law is a burden, or 'disadvantageous' to the defendant, but whether it makes more burdensome the punishment for the crime." Ward, 123 Wn.2d at 497 (citing Collins, 497 U.S. at 42-43). Post-Collins, Washington continues to use "disadvantageous" as part of the test for unconstitutional ex post facto statutes but explicitly tethers the term to "punishment." In re Pers. Restraint of Powell, 117 Wn.2d 175, 188, 814 P.2d 635 (1991). "The threshold question in determining whether a law which affects parole is disadvantageous to prisoners is whether the law alters the 'standard of punishment' which existed under prior law." Powell, 117 Wn.2d at 188.

Our legal history and preexisting case law do not support Okler's argument that the Washington State Constitution requires a broader reading of the term "disadvantageous" when determining whether a law goes against ex post facto restrictions. Indeed, the link between the term "disadvantageous" and the phrase "alters the standard of punishment" stems not from federal law but from the Washington Supreme Court in Powell, 117 Wn.2d at 188. We conclude that the Gunwall factors weigh against independent interpretation of Washington's ex post facto clause.[8]

---

[8] Okler contends the sixth Gunwall factor favors independent interpretation because criminal law is a matter of local concern delegated to the state. He is correct that "criminal law in general involves local, not national, concerns." State v. Russell, 125 Wn.2d 24, 61, 882 P.2d 747 (1994). But this does not affect our conclusion. Four of the six Gunwall factors do not support independent and broader protection under the state ex post facto clause.

Retroactive Application

Our Supreme Court has determined that retroactive application of the

1990 sex-offender registration statute does not violate the prohibition on ex post

facto laws because it does not impose punishment:

> The Legislature's purpose was regulatory, not punitive; registration does not affirmatively inhibit or restrain an offender's movement or activities; registration per se is not traditionally deemed punishment; nor does registration of sex offenders necessarily promote the traditional deterrent function of punishment. Although a registrant may be burdened by registration, such burdens are an incident of the underlying conviction and are not punitive for purposes of ex post facto analysis.

Ward, 123 Wn.2d at 510-11. We have similarly determined that the 1999

amendments requiring in-person registration for offenders without a fixed

address are regulatory, not punitive. Boyd, 1 Wn. App. 2d at 510-13.[9] Okler fails

to show that the sex-offender registration statute and its 1999 amendment as

retroactively applied to him violate the ex post facto clause of the state or federal

constitutions.

Legal Financial Obligations

Okler claims his judgment and sentence erroneously includes community

custody supervision fees and interest on nonrestitution LFOs. We agree.

Unless waived by the court, offenders must pay supervision fees for their

term of community custody. RCW 9.94A.703(2)(d). Here, the trial court imposed

---

[9] In following precedent in our ex post facto analysis, we note RCW 9A.44.130(6)(b) imposes more onerous reporting requirements for individuals experiencing homelessness than others. This is particularly concerning given the attendant increase in the risk of prosecution and future imprisonment in light of the apparent absence of evidence that the requirements increase public safety. See ELIZABETH ESSER-STUART, "The Irons Are Always in the Background": The Unconstitutionality of Sex Offender Post-Release Laws As Applied to the Homeless, 96 TEXAS L. REV. 811, 816 (2018).

only nondiscretionary LFOs and stated that it would "waive all other financial obligations based on indigency." Despite the court's oral ruling, Okler's judgment and sentence included discretionary community custody supervision fees. Because the record reflects Okler's indigency and the court's intent to waive all discretionary LFOs, we remand for the trial court to strike the provision. See State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, review denied, 195 Wn.2d 1022, 464 P.3d 198 (2020).

The State concedes that a court can no longer impose interest on nonrestitution LFOs. This concession is proper under RCW 3.50.100(4)(b), which prohibits interest accrual on financial obligations other than restitution. See Dillon, 12 Wn. App. 2d at 153. We remand to strike the interest provision from the judgment and sentence.

Statement of Additional Grounds for Review

Okler raises several issues in his SAG and asks to withdraw his 1990 guilty plea as well as his later guilty pleas to failure to register charges. Okler claims the police failed to inform him of his Miranda[10] rights at the time of his arrest for the child molestation charges. He claims the police mistreated and coerced him into signing a confession. Okler also alleges coercion by his attorneys, who "scared [him] into taking" the guilty pleas for the molestation and failure to register charges. He claims that he misunderstood his most recent plea agreement and received ineffective assistance of counsel.

---

[10] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

We are unable to review Okler's allegations because they pertain to matters outside the record. State v. Kinzle, 181 Wn. App. 774, 786, 326 P.3d 870 (2014). Issues that involve evidence not in the record are properly raised in a personal restraint petition rather than a SAG. State v. Calvin, 176 Wn. App. 1, 26, 316 P.3d 496 (2013), remanded on other grounds, 183 Wn.2d 1013, 353 P.3d 640 (2015).

We affirm Okler's conviction for failure to register as a sex offender but remand to strike community custody supervision fees and nonrestitution interest from his judgment and sentence.

Brennan, J

WE CONCUR:

Smith, J.                          Mann, C.J.