658

[Nos. 69741-8; 69833-3. En Banc.]
Argued January 30, 2001. Decided May 17, 2001.

THE STATE OF WASHINGTON, *Respondent*, v. ZACHARY B.
SCHMIDT, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. MARLIN L.
AYERS, *Petitioner*.

*John L. Cross* (of *Ronald D. Ness & Associates*), and *Geoffrey Cross* (of *Geoffrey C. Cross, P.S.*) for petitioners.

*Gerald A. Horne, Prosecuting Attorney for Pierce County*, and *Terry Lane, Deputy*; and *Russell D. Hauge, Prosecuting Attorney for Kitsap County*, and *Randall A. Sutton, Deputy*, for respondent.

SMITH, J. — In consolidated cases Petitioners Zachary B. Schmidt and Marlin L. Ayers seek review of separate decisions of the Court of Appeals, Division Two.

In *State v. Schmidt*,[1] the Court of Appeals affirmed Petitioner's Kitsap County Superior Court conviction for first degree unlawful possession of a firearm. The Court of Appeals reasoned that the 1994 amendment to the firearms

---

[1] *State v. Schmidt*, 100 Wn. App. 297, 996 P.2d 1119 (2000).

statute, RCW 9.41.040, making it a felony for persons previously convicted of a serious offense (including any crime of violence) to possess a firearm, did not violate the constitutional prohibition against ex post facto laws because the amended statute punished only future conduct.

In *State v. Ayers*,[2] the Court of Appeals in an unpublished opinion reversed and remanded dismissal by the Pierce County Superior Court of seven counts of second degree unlawful possession of a firearm. The Court of Appeals reasoned that the 1996 amendment to RCW 9.41.040 making it a felony for a person convicted of "any felony" to possess a firearm did not violate the constitutional prohibition against ex post facto laws because the amended statute punished only future conduct.

This court consolidated the cases and granted review. We affirm the Court of Appeals in both cases.

## QUESTION PRESENTED

The question presented in this case is whether amendments to RCW 9.41.040 violate constitutional prohibitions against ex post facto laws by making a convicted felon's possession of all firearms unlawful because of a felony conviction which occurred prior to the statutory amendments.

## STATEMENT OF FACTS

### STATE OF WASHINGTON V. ZACHARY B. SCHMIDT

In 1988, Petitioner Zachary B. Schmidt was convicted of a felony, assault in the second degree.[3] At that time, RCW

---

[2] *State v. Ayers*, No. 24379-2-II, 2000 Wash. App. LEXIS 725, 2000 WL 554275 (Wash. Ct. App. May 5, 2000).

[3] *See* Report of Proceedings, Kitsap County Superior Court (Apr. 29, 1998) at 5-6. During a CrR 3.5 hearing, instead of submitting a certified copy of Petitioner's conviction for second degree assault in 1988 (Cause Number 88-1-00055-5), the State presented a stipulation that Petitioner was convicted of a "serious offense" as required by RCW 9.41.040; *see also* Clerk's Papers at 1.

9.41.040[4] prohibited persons convicted of that offense from owning, possessing or having control of *short firearms and pistols*, but did not prohibit ownership, possession or control of *rifles*. In 1994, RCW 9.41.040 was amended to prohibit persons who committed any "crime of violence" from owning, possessing or having control of *any firearm*.[5]

On December 1, 1997 at 2:27 A.M., while on routine patrol, Kitsap County Deputy Sheriff Ronald S. Zude observed a 1978 Ford pickup truck with no license plate lights heading west on Holly Road in Kitsap County, Washington.[6] Deputy Zude made a traffic stop and, because of the early morning hour, asked Petitioner, the driver, if "there were any guns, knives or drugs in the vehicle."[7] Petitioner Schmidt hesitated and replied "not to my knowledge."[8] Deputy Zude determined Petitioner's driver's license was suspended and arrested him for driving with a suspended license. There was another passenger in the truck. The deputy also learned the owner of the vehicle was Glenn A. Mesinger.[9] During search of the vehicle incident to the arrest, Deputy

---

[4] Former RCW 9.41.040 (1983).

[5] Former RCW 9.41.040 (1994) (LAWS OF 1994, 1st Spec Sess., ch. 7, § 402) provided:

> (1) A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm if the person owns, has in his or her possession, or has in his or her control any firearm:

> (a) After having previously been convicted in this state or elsewhere of a serious offense, a domestic violence offense enumerated in RCW 10.99.020(2), a harassment offense enumerated in RCW 9A.46.060, or of a felony in which a firearm was used or displayed, except as otherwise provided in subsection (3) or (4) of this section[.]

"Serious offense" was defined elsewhere in the statute to include any "crime of violence." RCW 9.41.010(11) and (12)(a); (LAWS OF 1994, 1st Spec. Sess., ch. 7, § 401(11) and (12)(a)).

[6] *See* Report of Proceedings, Kitsap County Superior Court (Apr. 29, 1998) at 26-30 and 53; *see* Clerk's Papers at 33, "Findings of Fact and Conclusions of Law on CrR 3.5 Hearing," Kitsap County Superior Court (Apr. 30, 1998).

[7] *Id.* at 30; *see* Clerk's Papers at 34.

[8] *Id.*; *see* Clerk's Papers at 33.

[9] *See* Report of Proceedings, Kitsap County Superior Court (Apr. 29, 1998) at 41 and 53.

Zude found under and behind the driver's seat two long guns, a loaded 30-30 Winchester rifle and a BB gun.[10]

The trial court in conclusions of law at the CrR 3.5 hearing determined that Deputy Zude made a "valid traffic stop" and his initial questions to Petitioner about the existence of any weapons in the truck were "appropriate to a *Terry*[11] stop, were a reasonable precaution in the interests of officer safety and were made before [he] was in custody."[12] The court concluded that Deputy Zude's questions concerning BB gun pellets found in Petitioner's coat pocket were not an "interrogation within the meaning of the *Miranda*[13] decision," that he was advised of his *Miranda* rights, and his statements were admissible.[14]

On December 3, 1997, the Kitsap County Prosecuting Attorney filed an information in the Kitsap County Superior Court charging Petitioner Schmidt with one count of first degree unlawful possession of a firearm as follows:

> He, the said ZACHARY B. SCHMIDT, in the County of Kitsap, State of Washington, on or about the 1st day of December, 1997, owned, possessed, or had in his or her control a firearm, after having been previously convicted of Second Degree Assault in State v. Schmidt, Kitsap County Cause No. 88-1-00055-5; contrary to the Revised Code of Washington 9.41.040(1)(a).[15]

On April 30, 1998, a jury found Petitioner "guilty" of unlawful possession of a firearm in the first degree.[16] He

---

[10] *Id.* at 32-36 and 50. At trial, Deputy Zude testified that when he asked Petitioner about the guns found in the truck, he responded "[m]y mind went blank about the rifle, and I forgot it was there." When Petitioner took the stand, he testified he received the keys to Mr. Mesinger's truck on the evening of November 30, and although he had seen the gun earlier that night, he did not place it under the seat of the truck. *Id.* at 53-60.

[11] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[12] *See* Clerk's Papers at 34.

[13] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[14] Clerk's Papers at 33-34.

[15] *Id.* at 2.

[16] *Id.* at 71.

was sentenced to prison for 36 months by Judge Grant L. Anderson.[17] He appealed to the Court of Appeals, Division Two.[18] On April 14, 2000, the Court of Appeals affirmed the conviction, concluding that "the 1994 amendment is punitive," but because "it punishes future conduct (i.e., conduct occurring after its effective date), not past conduct (i.e., conduct occurring before its effective date)," Petitioner's conviction did not violate the ex post facto clause.[19]

In a concurring opinion, Chief Judge David Armstrong agreed with the result, but stated "the majority answers the wrong question."[20] His concurrence applied the reasoning of the United States Court of Appeals for the Ninth Circuit in *United States v. Huss*,[21] a case involving an ex post facto challenge to Oregon's firearms statute. Chief Judge Armstrong reasoned that "the 1994 amendment is not punitive and, thus, does not violate ex post facto principles. The Legislature did not intend the amendment to be punitive."[22]

### STATE OF WASHINGTON V. MARLIN L. AYERS

In 1987 or 1988, Petitioner Marlin L. Ayers was convicted of a felony, theft in the first degree.[23] At that time former RCW 9.41.040[24] did not prohibit a person convicted of theft

---

[17] *Id.* at 87. Petitioner's sentence represented the low end of the standard range sentence of 36 to 48 months with an offender score of 4.

[18] *Id.* at 96.

[19] *Schmidt*, 100 Wn. App. 297.

[20] *Id.* at 305 (Armstrong, C.J., concurring).

[21] 7 F.3d 1444 (9th Cir. 1993), *overruled in part on other grounds by United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998).

[22] *Schmidt*, 100 Wn. App. at 307 (Armstrong, C.J., concurring).

[23] The trial court's findings of fact and conclusions of law (Clerk's Papers at 59) indicate Petitioner was convicted of first degree theft in 1987. This is also indicated in Petitioner's Motion for Discretionary Review at 1 and the State's brief at 2. However, the unpublished decision of the Court of Appeals identifies the date of conviction as 1988. This is consistent with Petitioner's declaration and the Declaration for Determination of Probable Cause. (Clerk's Papers at 6 and 70.) The inconsistency is of no consequence.

[24] Former RCW 9.41.040(1) (1983).

in the first degree from owning, possessing, or having control of any firearm.[25]

In 1984, 1989 and 1993,[26] Petitioner applied for and obtained concealed weapons permits from the Puyallup Police Department.[27] Each application form contains a statement informing applicants that "persons . . . who have been convicted of a crime punishable for a term exceeding 1 year" are prohibited from receiving a firearm.[28] On all three applications, Petitioner Ayers represented that he had not been convicted of a felony.

In 1996 former RCW 9.41.040 was amended to make it a crime for a person convicted of "any felony" to possess any firearm.[29] Under the 1996 amendment, theft in the first

[25] LAWS OF 1983, ch. 232, § 2.

[26] The expiration date for a valid concealed weapons permit obtained in 1993 was 1997. See Clerk's Papers at 74.

[27] Id. at 74-76.

[28] Id. Each applicant is required to initial or sign the completed application form which attests to the fact they "have read the entire text of [the] form and [their] statements and the other information set forth are true and correct." Petitioner Ayers initialed or signed all three applications.

[29] Former RCW 9.41.040(1)(a) and (b)(i) (1996) (LAWS OF 1996, ch. 295, § 2) provided:

(1)(a) A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted in this state or elsewhere of any serious offense as defined in this chapter.

(b) A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the second degree, if the person does not qualify under (a) of this subsection for the crime of unlawful possession of a firearm in the first degree and the person owns, has in his or her possession, or has in his or her control any firearm:

(i) After having previously been convicted in this state or elsewhere of any felony not specifically listed as prohibiting firearm possession under (a) of this subsection, or any of the following crimes when committed by one family or household member against another, committed on or after July 1, 1993: Assault in the fourth degree, coercion, stalking, reckless endangerment in the second degree, criminal trespass in the first degree, or violation of the provisions of a protection order or no-contact order restraining the person or excluding the person from a residence . . . ;

By 1996, the statute was divided into first and second degree unlawful possession of a firearm, with the lesser degree applying to those convicted of certain crimes other than "serious offenses." Before the 1996 amendment, the list

degree was included in the category of crimes for which conviction would make it unlawful to own, possess or have control of *any firearm*.

Between November 1, 1997 and November 25, 1997, Petitioner Ayers and his wife and son pawned several firearms at two pawnshops in Kitsap County: Topkick Jewelry and Loan, and Randy's Loan and Coin.[30] One of the pawnshop owners, Ted Wilkinson, on November 11, 1998 signed a declaration that Petitioner's wife, Ms. Sharon Ayers, or the Ayers' son, would bring firearms into the pawnshop.[31] He stated he never saw Petitioner actually touch the firearms, but Petitioner filled out the paperwork. Petitioner in his declaration dated December 11, 1998 stated that his wife or his son delivered the firearms to the pawnshop.[32]

On February 17, 1998, the Pierce County Superior Court issued a certificate and order of discharge on Petitioner Ayers' conviction of theft in the first degree.[33] The court on June 11, 1998 issued an order restoring Petitioner Ayers' firearms rights.[34] Between November 1997 and June 11, 1998, police engaged in an investigation of Petitioner Ayers'

---

of crimes to which the lesser degree applied was limited. *See* LAWS OF 1995, ch. 129, § 16 (Initiative Measure No. 159). The 1996 amendment expanded the list to include "any felony" instead of merely the "serious offenses" falling within first degree unlawful possession of a firearm.

[30] *See* Clerk's Papers at 1-7.

[31] *Id.* at 69.

[32] *Id.* at 70-71.

[33] *Id.* at 14. The order of discharge stated that "the defendant's civil rights lost by operation of law upon conviction [are] HEREBY RESTORED. *This restoration of civil rights specifically may not include the right to ship, transport, possess or receive firearms. Legal advice should be obtained.*" (Emphasis added.)

[34] *Id.* at 15. The order restoring firearms rights under RCW 9.41.040 stated that "[Petitioner] being represented by Geoffrey Cross, it appearing that petitioner has not been convicted of a Class A felony or gross misdemeanor in five years, and has no pending charges, and is in no way a danger to the public, now therefore, it is . . . ORDERED, ADJUDGED AND DECREED that the firearm rights of [Petitioner], Marlin L. Ayers, [are] restored."

firearms transactions with pawnshops.[35]

On October 13, 1998, the Pierce County Prosecuting Attorney filed an information in the Pierce County Superior Court charging Petitioner Ayers with seven counts of second degree unlawful possession of a firearm under RCW 9.41.040(1)(b). Count one of the information read:

I, JOHN W. LADENBURG, Prosecuting Attorney for Pierce County, . . . do accuse MARLIN L. AYERS of the crime of UNLAWFUL POSSESSION OF A FIREARM IN THE SECOND DEGREE, committed as follows:

That MARLIN L. AYERS, in Pierce County, Washington, on or about the 8th day of November, 1997, did unlawfully and feloniously own, have in his possession, or under his control a firearm, to wit: a Winchester 30-30 caliber rifle, he having been previously convicted in the State of Washington or elsewhere of a felony, to wit: Theft in the First Degree, contrary to RCW 9.41.040(1)(b), and against the peace and dignity of the State of Washington.[36]

Counts II through VII were identical, with the exception of the date and the make and model of the rifles.[37]

On December 11, 1998, Petitioner moved to dismiss the information[38] claiming (1) the prosecutor acted arbitrarily in charging him and therefore the charges should be dismissed under CrR 8.3(b); (2) application of the 1996 amendment to his case violated the prohibition against ex post facto laws; and (3) there was not sufficient evidence that he possessed the firearms and thus failed to establish a prima

---

[35] *Id.* at 60; Br. of Appellant at 3; Report of Proceedings, Pierce County Superior Ct. (Dec. 23, 1998) at 17. The prosecutor stated in pretrial conference that Petitioner's counsel presented him with an order restoring Petitioner's firearms rights, suggesting he could not be prosecuted for this crime because his rights were restored. Petitioner's counsel responded that Petitioner was advised by "the pawn shop detail while this was under investigation that there was a problem. That's why [Petitioner] proceeded expeditiously . . . to clean up this mess. The problem was that the co-defendant [in the first degree theft case] hadn't paid his share of the restitution."

[36] Clerk's Papers at 1.

[37] *Id.* at 1-5.

[38] *Id.* at 84-90.

facie case under *State v. Knapstad*.[39]

The Superior Court, the Honorable Grant L. Anderson, heard oral arguments on the motion on December 23, 1998 and issued findings of fact and conclusions of law on February 10, 1999.[40] The court granted Petitioner Ayers' motion to dismiss the charges,[41] concluding (1) the facts in the case were significantly different from the facts in *State v. Watkins*,[42] and (2) the matter should be dismissed in the interests of justice under CrR 8.3 because of its unique facts, citing *State v. Knapstad* and *State v. Sonneland*.[43]

The State appealed to the Court of Appeals, Division Two. On May 5, 2000, in an unpublished opinion, the Court of Appeals reversed and remanded the case for further proceedings.[44] The court, the Honorable Elaine Houghton writing, concluded (1) the trial court abused its discretion when it ordered dismissal of the case under CrR 8.3(b); (2) the 1996 amendment did not violate the ex post facto clause because the statute would punish Petitioner for future conduct and not past conduct;[45] and (3) dismissal on a *Knapstad* motion was improper because there was sufficient evidence for a trier of fact to find constructive posses-

---

[39] 107 Wn.2d 346, 729 P.2d 48 (1986).

[40] Report of Proceedings, Pierce County Superior Ct. (Dec. 23, 1998 and Feb. 10, 1999).

[41] Clerk's Papers at 59-62.

[42] 76 Wn. App. 726, 887 P.2d 492 (1995). The Court of Appeals, Division One, concluded RCW 9.41.040, making it a crime for a convicted felon to possess a short firearm or pistol, did not violate ex post facto prohibitions, as applied to a juvenile who committed a felony VUSCA (violation of Uniform Controlled Substances Act) offense before enactment of an amendment to the statute setting forth the substantive offense, "because it did not alter or increase the punishment for an existing crime," but rather "created a new substantive offense." *Id.* at 731-32.

[43] 80 Wn.2d 343, 494 P.2d 469 (1972).

[44] *State v. Ayers*, No. 24379-2-II, 2000 Wash. App. LEXIS 725, 2000 WL 554275 (Wash. Ct. App. May 5, 2000).

[45] In addressing the ex post facto issue, the Court of Appeals relied upon its decision in *Forster v. Pierce County*, 99 Wn. App. 168, 991 P.2d 687, *review denied*, 141 Wn.2d 1010 (2000), in which it adopted the reasoning in *State v. Watkins*.

sion beyond a reasonable doubt.[46]

Both Petitioner Schmidt and Petitioner Ayers sought review by this court, which was granted on November 11, 2000. The cases were consolidated because of the common issue of whether the 1994 and 1996 amendments making it unlawful to possess firearms because of felonies they committed prior to the amendments violate the constitutional prohibition against ex post facto laws.

## DISCUSSION

The current version of RCW 9.41.040 provides in relevant part:

**Unlawful possession of firearms—Ownership, possession by certain persons.** (1)(a) A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted in this state or elsewhere of any serious offense as defined in this chapter.[47]

(b) A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the second degree, if the person does not qualify under (a) of this subsection for the crime of unlawful possession of a firearm in the first degree and

---

[46] Only the ex post facto issue is now before this court.

[47] RCW 9.41.010(12) defines "serious offense" as "any of the following felonies or a felony attempt to commit any of the following felonies, as now existing or hereafter amended: (a) Any crime of violence[.]"

RCW 9.41.010(11) defines any "crime of violence" as:

(a) Any of the following felonies, as now existing or hereafter amended: Any felony defined under any law as a class A felony or an attempt to commit a class A felony, . . . assault in the second degree . . . ;

(b) Any conviction for a felony offense in effect at any time prior to June 6, 1996, which is comparable to a felony classified as a crime of violence in (a) of this subsection; and

(c) Any federal or out-of-state conviction for an offense comparable to a felony classified as a crime of violence under (a) or (b) of this subsection.

RCW 9.41.010(14) defines "felony" to mean: "any felony offense under the laws of this state or any federal or out-of-state offense comparable to a felony offense under the laws of this state."

the person owns, has in his or her possession, or has in his or her control any firearm:

(i) After having previously been convicted in this state or elsewhere of any felony not specifically listed as prohibiting firearm possession under (a) of this subsection, or any of the following crimes when committed by one family or household member against another, committed on or after July 1, 1993: Assault in the fourth degree, coercion, stalking, reckless endangerment, criminal trespass in the first degree, or violation of the provisions of a protection order or no-contact order restraining the person or excluding the person from a residence . . . ;

(ii) After having previously been involuntarily committed for mental health treatment under RCW 71.05.320, 71.34.090, chapter 10.77 RCW, or equivalent statutes of another jurisdiction, unless his or her right to possess a firearm has been restored as provided in RCW 9.41.047;

 . . . .

(2)(a) Unlawful possession of a firearm in the first degree is a class B felony, punishable under chapter 9A.20 RCW.

(b) Unlawful possession of a firearm in the second degree is a class C felony, punishable under chapter 9A.20 RCW.

(3) Notwithstanding RCW 9.41.047 or any other provisions of law, as used in this chapter, a person has been "convicted", whether in adult court or adjudicated in a juvenile court, at such time as a plea of guilty has been accepted, or a verdict of guilty has been filed, . . . . Conviction includes a dismissal entered after a period of probation, suspension or deferral of sentence, and also includes equivalent dispositions by courts in jurisdictions other than Washington state. A person shall not be precluded from possession of a firearm if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted or the conviction or disposition has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence. . . .

(4) Notwithstanding subsection (1) of this section, a person convicted of an offense prohibiting the possession of a firearm under this section other than murder, manslaughter, robbery, rape, indecent liberties, arson, assault, kidnapping, extortion,

burglary, or violations with respect to controlled substances under RCW 69.50.401(a) and 69.50.410, who received a probationary sentence under RCW 9.95.200, and who received a dismissal of the charge under RCW 9.95.240, shall not be precluded from possession of a firearm as a result of the conviction. Notwithstanding any other provisions of this section, if a person is prohibited from possession of a firearm under subsection (1) of this section and has not previously been convicted of a sex offense prohibiting firearm ownership under subsection (1) of this section and/or any felony defined under any law as a class A felony or with a maximum sentence of at least twenty years, or both, the individual may petition a court of record to have his or her right to possess a firearm restored:

(a) Under RCW 9.41.047; and/or

(b)(i) If the conviction was for a felony offense, after five or more consecutive years in the community without being convicted or currently charged with any felony, gross misdemeanor, or misdemeanor crimes, if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.360; or

(ii) If the conviction was for a nonfelony offense, after three or more consecutive years in the community without being convicted or currently charged with any felony, gross misdemeanor, or misdemeanor crimes, if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.360 and the individual has completed all conditions of the sentence.

Petitioners Schmidt and Ayers contend the 1994 and 1996 amendments to the firearms statute, RCW 9.41.040, violate constitutional prohibitions to the extent the amendments prohibit them from owning, possessing or having control of any firearm because of a prior felony conviction. They argue the Court of Appeals erred in concluding the ex post facto clause was not violated, based upon its determination that the amendments punished them for future conduct and not past conduct involving a prior conviction.

Petitioner Schmidt argues that the Court of Appeals did not address the proper issue—whether his punishment increased when the 1994 amendment was enacted because it took away his right to own, possess or have control of a

rifle—which he asserts was correctly identified as the issue by Chief Judge Armstrong in his concurring opinion.[48] Similarly, Petitioner Ayers argues that application of the 1996 amendment to his case increased his punishment after his prior conviction, and prior to enactment of the 1996 amendment, thus depriving him of his then existing right to own, possess or have control of firearms.[49]

The State contends in both cases that the decisions of the Court of Appeals were correct. The State argues in the *Schmidt* case that Petitioner's conviction for unlawful possession of a firearm in the first degree did not violate the ex post facto clause because he was being punished for his conduct after enactment of the 1994 amendment and not for his prior conduct.[50] The State also asserts that Petitioner's punishment for his prior felony conviction was not increased because the statute prohibiting his ownership, possession or control of firearms was primarily regulatory in nature.[51] The State in the *Ayers* case made a similar argument that the ex post facto clause is not violated and the statute is not designed solely for punishment, but is designed primarily to protect the public.[52]

The ex post facto clauses of the United States Constitution[53] and the Washington Constitution[54] prohibit enactment of any law which imposes punishment for an act which was not punishable when committed, or which increases the quantum of punishment after the offense was

---

[48] *See* Pet. for Review (*Schmidt*) at 6-7.

[49] *See* Mot. for Discretionary Review (*Ayers*) at 4-5.

[50] *See* Suppl. Br. of Resp't (*Schmidt*) at 2; Br. of Resp't (*Schmidt*) at 2-7.

[51] *See* Suppl. Br. of Resp't (*Schmidt*) at 3.

[52] *See* Br. of Appellant (*Ayers*), Court of Appeals, Division Two, at 10.

[53] "No State shall . . . pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility." U.S. Const. art. I, § 10, cl. 1.

[54] "No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed." Wash. Const. art. I, § 23.

committed.[55] The purpose of the constitutional prohibitions against ex post facto laws is to assure that persons have fair warning of conduct which will result in criminal penalties and of the punishment the State may impose on violators of its laws.[56] The test to determine whether a law violates the ex post facto clause is whether the law " '(1) is substantive, [or] merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) disadvantages the person affected by it.' "[57] In the context of an act already criminally punished or punishable, "disadvantage" means the statute alters the standard of punishment which existed under the prior law.[58]

■ "The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts."[59] If "the restriction of the individual comes about as a relevant incident to a regulation of a present situation," the law is not ex post facto.[60] The principal question to be decided in these cases is whether the amendments to the firearms statute are unconstitutional because they punish petitioners for owning, possessing or having control of firearms based upon their felony convictions which occurred prior to enactment of the amendments.

■ As an initial consideration, it is the law in effect at the time a criminal offense is actually committed that

---

[55] *In re Pers. Restraint of Stanphill*, 134 Wn.2d 165, 169-70, 949 P.2d 365 (1998) (citing *State v. Hennings*, 129 Wn.2d 512, 524-25, 919 P.2d 580 (1996)); *State v. Ward*, 123 Wn.2d 488, 496-98, 869 P.2d 1062 (1994) (Ex post facto clause not violated because applying the sex offender registration statute to prior convictions occurring before its enactment did not constitute punishment.).

[56] *Weaver v. Graham*, 450 U.S. 24, 28-29, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

[57] *Ward*, 123 Wn.2d at 498 (emphasis omitted) (quoting *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 185, 814 P.2d 635 (1991) (citing *Weaver v. Graham*, 450 U.S. at 29; *Collins v. Youngblood*, 497 U.S. 37, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990))).

[58] *Id.*

[59] *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S. Ct. 1146, 4 L. Ed. 2d 1109 (1960).

[60] *De Veau*, 363 U.S. at 160.

controls disposition of the case.[61] In this case, the law on the dates petitioners were charged in 1997 with unlawful possession of a firearm under former RCW 9.41.040 is controlling and not the law in effect on the dates of their prior convictions.

The majority opinion of the Court of Appeals in *State v. Schmidt* began with the correct premise that ex post facto prohibitions apply only to statutes which are "criminal" or "punitive."[62] The court then determined the 1994 amendment to RCW 9.41.040 was both "criminal and punitive" because it made criminally punishable the possession of firearms by persons who had previously been convicted of second degree assault.[63]

Both the 1994 and 1996 amendments are substantive (they affirmatively prohibit possession of firearms by convicted felons under penalty of criminal punishment) and retrospective (they are applicable to petitioners based upon crimes they committed before the amendments were enacted). The dispositive question is whether the amendments altered the "standard of punishment" for petitioners' predicate offenses.

This court has held that no ex post facto violation occurred when offenses committed before enactment of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, were used to calculate the offender score for subsequent crimes.[64] The court reasoned that the use of prior offenses to determine the sentence range for the post-SRA offense did not increase the punishment for past crimes but served only to calculate the sentence for the current crime.[65]

The 1994 and 1996 amendments to RCW 9.41.040 do not alter the standard of punishment for prior felony

---

[61] *Huss*, 7 F.3d at 1446; *State v. Edwards*, 104 Wn.2d 63, 70, 701 P.2d 508 (1985) (quoting *Johnson v. Morris*, 87 Wn.2d 922, 927, 557 P.2d 1299 (1976)).

[62] *Schmidt*, 100 Wn. App. at 299-302; *see Ward*, 123 Wn.2d at 499.

[63] *Schmidt*, 100 Wn. App. at 302.

[64] *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 759 P.2d 436 (1988).

[65] *In re Williams*, 111 Wn.2d at 363.

convictions. This conclusion is supported by the reasoning of the United States Court of Appeals for the Ninth Circuit in *United States v. Huss*.[66] In that case, the court consid- ered an ex post facto challenge to Oregon's firearms statute. The court stated that "if a statute 'is a bona fide regulation of conduct which the legislature has power to regulate, it is not bad as an ex post facto law even though the right to engage in the conduct is made to depend on past behaviour, even behaviour before the passage of the regulatory act.' "[67] Although the court recognized that a statute is not insulated from challenge merely because the legislature declares a purpose to regulate present conduct rather than punish past conduct, the court explained that if " 'the past conduct can reasonably be said to indicate unfitness to engage in the future activity,' " the assumption will be that the statute is regulatory.[68] The court concluded the defendant's past conviction for first degree burglary could reasonably be said to indicate unfitness to engage in the future activity of possessing firearms.

The court observed that the text of the Oregon statute made clear the legislative intent to provide for the safety of citizens by restricting possession of firearms by those most likely to engage in dangerous conduct.[69] This, the court said, met the "legitimate safety [concern]" of regulating weapons.[70] The court also observed that since the amendment merely added rifles to the long preexisting list of prohibited weapons, it did not amount to punishment for ex post facto purposes. The court concluded the Oregon statute did "not impose punishment for prior crimes, but rather

---

[66] 7 F.3d 1444.

[67] *Huss*, 7 F.3d at 1447 (quoting *Cases v. United States*, 131 F.2d 916, 921 (1st Cir. 1942), *cert. denied*, 319 U.S. 770 (1943) ("[C]onviction of a crime may be made the conclusive test of past behaviour."); *see also United States v. Karnes*, 437 F.2d 284, 289-90 (9th Cir.), *cert. denied*, 402 U.S. 1008 (1971)).

[68] *Id.* at 1448 (quoting *Cases*, 131 F.2d at 921).

[69] *Id.*

[70] *Id.*

further[ed] the substantial and legitimate safety interest in preventing the misuse of firearms."[71]

Under the Washington Constitution, article I, section 1, the Legislature may prescribe laws to promote the health, peace, safety, and general welfare of the people of Washington.[72] " ' "[B]road discretion is thus vested in the legislature to determine what the public interest demands under particular circumstances, and what measures are necessary to secure and protect the same." ' "[73]

Although the prohibitions of the firearms statute impose a disability and present a threat of criminal punishment if violated, the prohibitions do not amount to punishment for a prior conviction, nor do they "alter the standard of punishment" applicable to those crimes.[74] The statute prohibits ownership, possession or control of any firearm by a person previously convicted of a felony. The status of a defendant as a convicted felon makes the person subject to charge and punishment for unlawful ownership, possession or control of any firearm.

 ██ Petitioner Schmidt also claims the right to bear arms is comparable to other fundamental rights, such as voting, traveling, and freedom from unreasonable search and seizure.[75] He suggests that if those rights were prospectively curtailed based upon the commission of prior offenses, the court would find such actions unconstitutional. However, possession of firearms has always been subject to government regulation for safety purposes.[76]

---

[71] *Id.*

[72] *Ward*, 123 Wn.2d at 508-09 (citing *State v. Brayman*, 110 Wn.2d 183, 192-93, 751 P.2d 294 (1988)).

[73] *Id.* (quoting *Brayman*, 110 Wn.2d at 193 (quoting *Reesman v. State*, 74 Wn.2d 646, 650, 445 P.2d 1004 (1968))).

[74] *See In re Personal Restraint of Ness*, 70 Wn. App. 817, 823-24, 855 P.2d 1191 (1993) (loss of the right to possess firearms is only a collateral consequence of pleading guilty to a crime), *review denied*, 123 Wn.2d 1009 (1994).

[75] Pet. for Review (*Schmidt*) at 7; *see also* Mot. for Discretionary Review (*Ayers*) at 2-3.

[76] *See Morris v. Blaker*, 118 Wn.2d 133, 144, 821 P.2d 482 (1992) (Right to bear

Petitioner merely makes a conclusory statement but cites no authority for his argument on the right to bear arms.

The decisions of the Court of Appeals in both the *Schmidt* case and the *Ayers* case were correct.

## SUMMARY AND CONCLUSIONS

In separate trials involving violations of the firearms statute, RCW 9.41.040, Petitioner Zachary B. Schmidt was convicted of one count of first degree unlawful possession of a firearm and seven counts of second degree unlawful possession of a firearm were dismissed against Petitioner Marlin L. Ayers. In this consolidated appeal, they assert that the Court of Appeals erred in finding that the 1994 and 1996 amendments to the firearms statute, making it unlawful for convicted felons to possess any firearm, did not violate the constitutional prohibition against ex post facto laws because, although criminal and punitive, they were not retrospective—the amendments punished only future conduct and not past conduct.

The federal and state ex post facto clauses prohibit enactment of any law which imposes punishment for an act which was not punishable when committed, or which increases the quantum of punishment after the crime was committed. The test to determine whether a law violates the ex post facto clause is whether the law is substantive or merely procedural; is retrospective (applies to events which occurred before its enactment); and disadvantages the person affected by it.

The Court of Appeals correctly determined the 1994 and 1996 amendments to RCW 9.41.040 did not violate prohibitions against ex post facto laws. The law in effect at the time a criminal offense is committed controls disposition of the case.

The 1994 and 1996 amendments to RCW 9.41.040 do not

arms is not absolute, but is subject to reasonable regulation by the State.); *see Cases*, 131 F.2d at 921-22; *see also State v. Krantz*, 24 Wn.2d 350, 353, 164 P.2d 453 (1945).

violate ex post facto prohibitions. The amendments do not alter the standard of punishment for prior felony convictions. This conclusion is supported by the reasoning of the United States Court of Appeals for the Ninth Circuit in *United States v. Huss* in which the court stated that "if a statute 'is a bona fide regulation of conduct which the legislature has power to regulate, it is not bad as an ex post facto law even though the right to engage in the conduct is made to depend on past behaviour, even behaviour before the passage of the regulatory act.' "[77]

The 1994 and 1996 amendments to RCW 9.41.040 did not punish petitioners for past offenses nor increase their punishment for prior convictions. Instead, incident to the State's regulation of firearms to protect the safety of the public, the prohibition of firearm possession was designed to regulate more closely the ownership, possession and control of firearms by those who, because of prior felony convictions, were unfit to be entrusted with any firearm.

We affirm the decision of the Court of Appeals, Division Two, which affirmed Petitioner Zachary B. Schmidt's conviction by the Kitsap County Superior Court for first degree unlawful possession of a firearm, and affirm reversal and remand by the Court of Appeals of dismissal by the Pierce County Superior Court of seven counts of second degree unlawful possession of a firearm against Petitioner Marlin L. Ayers.

IRELAND, BRIDGE, and OWENS, JJ., concur.

MADSEN, J. (concurring) — I concur with the majority but write separately to point out that the overwhelming majority of other jurisdictions have also concluded that statutes prohibiting felons from possessing firearms do not violate the ex post facto clause even when the predicate felony was committed before the statute was enacted. *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001) (listing cases from various federal and state jurisdictions).

The general consensus among courts applying both state

---

[77]*Huss*, 7 F.3d at 1447 (quoting *Cases v. United States*, 131 F.3d 916, 921 (1st Cir. 1942).

and federal laws is that such statutes punish present conduct only and, thus, the statutes are retrospective but not retroactive. *State v. Olvera*, 191 Ariz. 75, 76, 952 P.2d 313 (Ct. App. 1997). *See also United States v. Meade*, 986 F. Supp. 66, 69 (D. Mass. 1997) (listing federal cases), *aff'd*, 175 F.3d 215 (1st Cir. 1999); *People v. Mesce*, 52 Cal. App. 4th 618, 623, 60 Cal. Rptr. 2d 745 (1997) (listing California cases). As the California Court of Appeal in *Mesce* explained, retrospective means "looking to the past to inform the present," and such laws are permitted, but retroactive laws which are "acting presently to change the past" are prohibited as ex post facto. *Mesce*, 52 Cal. App. 4th at 625. While violation of the statute prohibiting felons from possessing firearms carries penal consequences, the law is not being applied retroactively because it does not create a new punishment for the prior offense; rather, it prohibits the subsequent conduct of owning a gun to convicted offenders arguably more likely to misuse firearms. *Id.* at 626.

The dissent in this case argues, however, that the prohibition itself, whether or not the law is ever violated or the offender ever punished, expands the disability suffered as a result of the prior felony conviction and thus represents an ex post facto increase in the punishment. Such an argument was forcefully advanced by the dissent in *People v. Mills*, 6 Cal. App. 4th 1278, 1298, 8 Cal. Rptr. 2d 310 (1992) (Timlin, J., concurring and dissenting). Notably, however, this is not the law in any state.

Most courts have concluded that restriction of the right of convicted felons to possess firearms is a legitimate exercise of police power rationally related to governmental interest in securing public safety. *United States v. Huss*, 7 F.3d 1444, 1447-48 (9th Cir. 1993), *overruled on other grounds by United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998); *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001); *Olvera*, 191 Ariz. at 77; *State v. Thiel*, 188 Wis. 2d 695, 703, 524 N.W.2d 641 (1994); *People v. Tice*, 220 Mich. App. 47, 52, 558 N.W.2d 245 (1996); *Dodson v. Commonwealth*, 23 Va. App. 286, 295, 476 S.E.2d 512 (1996).

When the intent of the legislation is regulatory, disqualification from gun ownership is not punishment. While it may cause hardship to those affected, the law does not violate ex post facto prohibitions. *Trop v. Dulles*, 356 U.S. 86, 96, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958); *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S. Ct. 1146, 1155, 4 L. Ed. 2d 1109 (1960); *Flemming v. Nestor*, 363 U.S. 603, 613-14, 80 S. Ct. 1367, 4 L. Ed. 2d 1435 (1960); *United States v. O'Neal*, 180 F.3d 115, 123 (4th Cir. 1999); *Huss*, 7 F.3d at 1447-48; *State v. Burke*, 109 Or. App. 7, 17, 818 P.2d 511 (1991) (Edmonds, J., concurring).

The intent of the law at issue in this case is plainly stated in its title: "Violence Reduction Programs—An act relating to violence prevention." ESSB H.B. 2319, Laws of 1994, 1st Spec. Sess., ch. 7. In addition to firearms control, the table of contents of the act lists public health, community networks, and public safety, as well as education, employment, and media as areas conducive to violence reduction programs. The intent section of the act lists reducing access to firearms, increasing educational efforts, and community-designed violence prevention programs in addition to increased criminal penalties as ways to reduce violence. Laws of 1994, 1st Spec. Sess., ch. 7, § 101; *see* RCW 43.70.540. The next paragraph of the intent section of the act specifically states that the problem is to be addressed as a public health issue using approaches similar to programs seeking to combat infectious disease, tobacco use, and traffic fatalities. *Id.* The legislative finding and intent section of this legislation which amends the responsibilities of a far-ranging array of public agencies including the state patrol, the office of the administrator for the courts, the department of social and health services, and the superintendent of public instruction as well as the department of corrections, is located in the statutory section pertaining to the department of health. RCW 43.70.540. This clearly implies the statute is regulatory in nature and the overall intent is to improve public health and safety.

Even the fact that the right to bear arms is a constitutional right does not make the restriction of that right punitive in nature because the restriction is merely a collateral disability incidental to the underlying felony conviction. *Tice*, 220 Mich. App. at 50; *Burke*, 109 Or. App. at 513. The right to vote, a fundamental constitutional right, can be denied to convicted felons as a nonpenal exercise of the power to regulate the franchise. *Fernandez v. Kiner*, 36 Wn. App. 210, 673 P.2d 191 (1983). Other collateral disabilities may also flow from a felony conviction, such as the right to obtain a license to practice medicine (*see Hawker v. New York*, 170 U.S. 189, 191-92, 18 S. Ct. 573, 42 L. Ed. 1002 (1898)) or the right to participate in union activities (*see De Veau*, 363 U.S. at 160). For purposes of ex post facto doctrine analysis, the question is not whether unpleasant consequences accrue based upon prior conduct, but whether the legislative aim was to punish that individual for past activity or to protect public safety through firearm regulation.

The majority here coincides with the conclusion of the majority of state and federal courts that legislation prohibiting possession of firearms by felons is not applied retroactively and, even if such legislation increases a civil disability or has penal effects, it does not violate ex post facto prohibitions because the intent of the legislature is to regulate potentially dangerous activity by persons reasonably deemed unfit to engage in that activity. Accordingly, I agree with the majority that the result reached by the Court of Appeals should be affirmed.

JOHNSON, J. (dissenting) — While I agree with much of what the majority says and its analytical framework for resolving the issue in these cases, I disagree with its result. I would hold the 1994 statutory amendments to RCW 9.41.040 altered the standard of punishment for Zachary Schmidt's and Marlin Ayers' predicate offenses and violate ex post facto principles. By minimizing the right being taken away, the majority erroneously concludes the amend-

ments are regulatory and not punitive. The time to impose punishment is at sentencing, not several years later.

We must recognize the significance of what RCW 9.41.040 takes away. Article I, section 24 of the Washington State Constitution provides, in relevant part, "[t]he right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired." It is this constitutional right that is being affected by the statutory amendments. No one disputes the significance of this constitutional right. I agree with the majority the government can take this right away from persons convicted of certain crimes and the loss of this constitutional right is an allowable punishment imposed for those convictions. The defendants in these cases were punished for previous crimes they committed. The issue in these cases arises because, but for the statutory amendments, defendants' current conduct of having guns would be perfectly legal. Therefore, no crime would have been committed.

The ex post facto clause of the Washington Constitution prohibits enactment of any law that increases the quantum of punishment after the offense was committed. WASH. CONST. art. I, § 23; *In re Pers. Restraint of Stanphill*, 134 Wn.2d 165, 169-70, 949 P.2d 365 (1998). This prohibition against ex post facto laws applies only to laws inflicting criminal punishment. *Johnson v. Morris*, 87 Wn.2d 922, 928, 557 P.2d 1299 (1976). Laws that are primarily regulatory with incidental punitive effects do not violate the ex post facto clause. *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S. Ct. 1146, 4 L. Ed. 2d 1109 (1960). Here, the dispositive issue is whether it is punishment to restrict an individual's constitutional right to possess firearms as a consequence of felony convictions occurring prior to a statute's effective date. The majority believes the ex post facto clause was not violated in these cases because, in its opinion, RCW 9.41.040 is a regulatory statute and not punitive. Majority at 676-78. I cannot agree with this conclusion.

There is nothing regulatory about creating a new crime where none existed before, based solely upon the conduct of

possessing a weapon. Determining whether a statute is regulatory or punitive is not difficult. We have analytical tools available that aid in making this determination. Clearly, restricting a person's right to posses a firearm, as a consequence of a criminal conviction, is punishment. The common understanding of "punishment" is a "sanction—such as a fine, penalty, confinement, or loss of property, right, or privilege—assessed against a person who has violated the law." BLACK'S LAW DICTIONARY 1247 (7th ed. 1999). When a person commits a crime, the State imposes punishment as a consequence of the criminal act. A convicted felon loses the right to liberty through incarceration or probation and may lose property in the form of a fine or forfeiture of real property. A convicted felon may also lose certain other constitutional rights. For example, a convicted felon loses the right to vote and, as in this case, a convicted felon's right to possess firearms is restricted. Loss of liberty, property, the right to vote, and the right to possess a firearm collectively encompass the punishment the State imposes on a convicted felon.

The problem arises in this case because, at the time of Schmidt's and Ayers' sentencing, the punishment available did not criminalize the conduct that gives rise to the current crimes. One thing we consider to determine whether a law is punitive is to look at the Legislature's intent in adopting the law. *State v. Ward*, 123 Wn.2d 488, 499, 869 P.2d 1062 (1994). The statute at issue, RCW 9.41.040, was amended in 1994 by Engrossed Second Substitute House Bill 2319, "Violence Reduction Programs." LAWS OF 1994, 1st Spec. Sess., ch 7. The "intent" section of the chapter included the following statements: "State efforts at reducing violence must include changes in criminal penalties, reducing the unlawful use of and access to firearms . . . . It is the immediate purpose of [this chapter] to . . . (3) increase the severity and certainty of punishment for youth and adults who commit violent acts." LAWS OF 1994, 1st Spec. Sess., ch. 7, § 101. These statements indicate that one purpose of the bill was to enact punitive measures.

The Legislature's intent to alter "criminal penalties, reducing the unlawful use of and access to firearms," was achieved by amending RCW 9.41.040, a criminal statute imposing punishment. LAWS OF 1994, 1st Spec. Sess., ch. 7, § 402. The punitive intent of the statute can be drawn from its express language and overall structure. Relevant sections of RCW 9.41.040 state a person is "guilty of the crime of unlawful possession of a firearm," and "[u]nlawful possession of a firearm . . . is a . . . felony, punishable under chapter 9A.20 RCW." RCW 9.41.040(1)(a), (2)(a)-(b). As part of the punishment under this statute, an individual may be incarcerated. RCW 9.41.040(2)(a)-(b). Moreover, RCW 9.41.040 is located in Title 9 of the Washington Revised Code, "Crimes and Punishments." When the Legislature drafts a statute located in a title dedicated to crimes and punishments, specifically uses the term "crime," provides a punishment for committing the crime, and lists imprisonment as one of the punishments for committing the crime, it is enacting a punitive statute. Regulatory statutes restrict conduct; this statute explicitly criminalizes conduct. This is a critical distinction.

We have addressed the difference between regulations and punishments in *Ward*, 123 Wn.2d 488. *Ward* held it was not punishment to require convicted sex offenders, upon release, to register with their local sheriff's office. *Ward*, 123 Wn.2d at 495. The present cases are distinguishable from *Ward* in two ways. First, in *Ward*, the registration requirement was a new *type* of alleged "punishment." In the present cases, the prohibition against possession of firearms is not a new *type* of punishment. Defendants' right to possess a firearm had already been restricted prior to the 1994 statutory amendments. Second, the State was not restricting a constitutional right in *Ward*. We held a convicted sex offender has no constitutional right to privacy in the information that RCW 9A.44.130 requires a sex offender to produce, because all the information can be obtained through alternative sources. *Ward*, 123 Wn.2d at 501-02. However, *Ward* does provide guidance as to how the

court determines whether a consequence is punishment.

Although the legislative intent of the bill amending RCW 9.41.040 and the language of RCW 9.41.040 itself indicate punitive intent, *Ward* provides an additional set of factors to consider when determining whether a statute is regulatory or punitive. A court is to consider

> "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned."

*Ward*, 123 Wn.2d at 499 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963)).

Application of the *Ward* factors indicates that prohibiting a convicted felon from possessing a firearm is punishment. The sanction is an affirmative restraint, prohibiting the exercise of a previously held constitutional right. Since 1935 the State has restricted a convicted felon's constitutional right to bear arms. *See State v. Krantz*, 24 Wn.2d 350, 353-54, 164 P.2d 453 (1945). The restriction of a constitutional right is a retributive action in response to the failure of the individual to comply with the laws of the state, and the threat of losing a constitutional right is a means of deterrence. Although there are some potential regulatory purposes for restricting a convicted felon's right to bear arms, these regulatory purposes could be achieved by other less restrictive regulatory means. The absolute prohibition against possession of any firearm is evidence of punitive intent.

Stripping an individual of the constitutional right to possess firearms as a derivative of a felony conviction is punishment. The State argued RCW 9.41.040 is not punitive because it prevents persons who are mentally ill,

juveniles, or persons pending trial from possessing fire-
arms. However, our analysis of RCW 9.41.040 is strictly
concerned with its effect as to formerly convicted felons.
Considering the totality of the circumstances, RCW
9.41.040 is punitive when applied to previously convicted
felons.

Additionally, the ex post facto analysis should begin with
the predicate offense. Since the clause prevents the govern-
ment from increasing the quantum of punishment, it must
first be determined what encompassed the initial punish-
ment. The majority, however, begins its analysis with
defendants' subsequent criminal convictions under amended
RCW 9.41.040. The majority's analysis fails to address the
question as to whether the State's initial restriction of
defendants' constitutional right to possess firearms was
punishment. The focus of our ex post facto analysis must
consider the effect of the amendment in relation to the
initial punishment and not the intent of the newly adopted
law. As part of defendants' punishment for their respective
predicate crimes, the State restricted their constitutional
right to bear arms. This initial restriction placed on defen-
dants was part of the punishment for their crimes. How-
ever, these initial restrictions do not criminalize the con-
duct in these cases. The statutory amendments do.

When an individual endures consequences as a direct
result of a felony conviction, those consequences are pun-
ishment. The right to bear arms is a fundamental right
protected by the Washington Constitution. As part of defen-
dants' punishment for their respective predicate crimes,
they were forbidden to possess "short firearms" and "pis-
tols." Application of the *Ward* factors indicates that restrict-
ing an individual's right to bear arms is a punishment for a
felony conviction, not a regulation. Thus, eliminating de-
fendants' right to possess *any* firearm, when their previous
punishment was the prohibition only against possession of
a "short firearm" or "pistol," increases the quantum of their

punishment in violation of the ex post facto clause. For these reasons, I respectfully dissent.

ALEXANDER, C.J., and SANDERS and CHAMBERS, JJ., concur with JOHNSON, J.

After modification, further reconsideration denied July 13, 2001.