[Nos. 53524-2-I; 53714-8-I.   Division One.   January 24, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID GORDON
FELIX, *Appellant*.
THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL LEROY
HAMMOND, SR., *Appellant*.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Brian M. Mc-Donald*, for respondent.

¶1 GROSSE, J. — Defendants David Felix and Michael Hammond challenge under *Blakely v. Washington*[1] the judicial finding that their crimes constituted domestic violence. But *Blakely* requires juries to find only facts that increase a defendant's potential punishment. Felix and

---

[1] 542 U.S. 296, 124 S. Ct. 2531, 2536, 159 L. Ed. 2d 403 (2004).

Hammond have identified no consequences of the finding that could have increased their punishment. We affirm.[2]

¶2 David Felix was convicted of third degree assault, fourth degree assault, and misdemeanor harassment against his girl friend. Michael Hammond was convicted of two counts of first degree child rape and two counts of first degree child molestation against his stepdaughters. In each case the sentencing court complied with RCW 10-.99.040(1)(d), which requires courts to "identify by any reasonable means on docket sheets those criminal actions arising from acts of domestic violence." Felix and Hammond each appealed. We consolidated the appeals for argument.

¶3 In *Blakely*, the United States Supreme Court reiterated the rule of *Apprendi v. New Jersey*[3]: " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' "[4] The *Blakely* Court further held that the relevant statutory maximum was the maximum sentence that a judge may impose without making any additional findings of fact.[5] "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority."[6] The question in this case is therefore whether the finding that a crime is one of "domestic violence" increases the defendants' potential punishment.[7]

---

[2] Felix and Hammond also challenge the sentencing requirement that they provide a DNA (deoxyribonucleic acid) sample under RCW 43.43.754. But we rejected the same arguments in *State v. Surge*, 122 Wn. App. 448, 94 P.3d 345 (2004) and *State v. S.S.*, 122 Wn. App. 725, 94 P.3d 1002 (2004).

[3] 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[4] *Blakely*, 124 S. Ct. at 2536 (quoting *Apprendi*, 530 U.S. at 490).

[5] *Blakely*, 124 S. Ct. at 2536-37.

[6] *Blakely*, 124 S. Ct. at 2537 (quoting 1 JOEL PRENTISS BISHOP, CRIMINAL PROCEDURE § 87, at 55 (2d ed. 1872) (emphasis added) (citation omitted)).

[7] We recognize that in *State v. Goodman*, 108 Wn. App. 355, 30 P.3d 516 (2001), *review denied*, 145 Wn.2d 1036 (2002), Division Two of this court rejected a claim

■ ¶4 Felix and Hammond identify three consequences of the domestic violence finding that they contend increase the punishment for their crimes. They first point to RCW 9.94A.535(2)(h), which allows a trial court to impose an exceptional sentence under certain circumstances. But RCW 9.94A.535(2)(h) provides that an exceptional sentence is justified for a crime of domestic violence only if "one or more of the following was present: . . . [t]he offense was part of an ongoing pattern of psychological, physical, or sexual abuse . . . ; [t]he offense occurred within sight or sound of the victim's or the offender's minor children . . . ; or . . . [t]he offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim." A finding of domestic violence alone does not authorize an exceptional sentence under RCW 9.94A.535(2)(h) and does not impermissibly increase the potential punishment.[8]

■ ¶5 Felix and Hammond next point to RCW 10-.99.050, which provides for enhanced recording and enforcement of no-contact orders that are entered as a condition of a defendant's sentence. Whether a no-contact order entered because of a criminal conviction constitutes punishment for purposes of the constitutional right to a jury determination of necessary facts is a question of first impression in Washington. But in *In re Personal Restraint of Arseneau*,[9] this court rejected the claim that a prison-imposed no-contact order is punishment for purposes of constitutional double jeopardy and ex post facto prohibi-

---

under *Apprendi* that "domestic violence" constituted an element that must be charged. But *Goodman* was resolved on the basis of legislative intent and, under *Apprendi* and its progeny, regardless of legislative intent, if a factual finding can increase punishment, only the jury can make the finding. *Apprendi*, 530 U.S. at 482-83; *Ring v. Arizona*, 536 U.S. 584, 604, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002); *Blakely*, 124 S. Ct. at 2537. Moreover, because of the way *Goodman* was argued, the court did not address the specific consequences of a domestic violence finding that Felix and Hammond discuss here. We therefore note *Goodman*'s holding, but do not rely on it.

[8] The finding actually at issue in *Blakely* was that the crime had been one of domestic violence "with deliberate cruelty." *Blakely*, 124 S. Ct. at 2535.

[9] 98 Wn. App. 368, 371, 989 P.2d 1197 (1999).

tions.[10] The prison regulations in issue prevented an inmate from contacting his niece, who fell into the same class of persons as his stepdaughter-victim.[11] Applying the necessary test that considers both legislative intent and punitive effect,[12] the *Arseneau* court reasoned that rule was intended to be only regulatory and upon considering seven factors[13] determined the effect was not so punitive as to override that intent:

> The *Mendoza-Martinez* factors do not show a punitive effect here. [*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963).] The prohibition imposes an affirmative burden. Arseneau cannot contact [his niece]. But no-contact provisions have not traditionally been considered punishment. They are civil in nature and designed to protect third parties. . . . The restriction does not depend on a finding of scienter. It is intended to regulate contact, not punish. Finally, the restriction is not exaggerated or excessive. It is specifically limited to the inappropriate contact between Arseneau and [his niece]. Arseneau's term of confinement is not altered. Thus, neither the double jeopardy clause nor the ex post fact[o] clause is implicated.[14]

¶6 Felix and Hammond have not argued there is a basis in *Apprendi* or its progeny to distinguish between "punishment" for purposes of the right to a jury finding and "punishment" for purposes of ex post facto and double jeopardy, and we find no reason to make such a distinction.[15] The procedures authorized by RCW 10.99.050 are even more clearly regulatory as opposed to punitive than

[10] *See also State v. Alexander*, 269 Conn. 107, 118-20, 847 A.2d 970 (2004).

[11] *Arseneau*, 98 Wn. App. at 379-80.

[12] *See State v. Ward*, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994); *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963).

[13] "1) [W]hether the sanction involves an affirmative disability or restraint; 2) whether it has been historically regarded as punishment; 3) whether it comes into play only on a finding of scienter; 4) whether it furthers retribution and deterrence; 5) whether the behavior to which it applies is already a crime; 6) whether an alternative purpose to which it may rationally be connected is assignable for it; and 7) whether it appears to be excessive in relation to the alternative purpose assigned." 98 Wn. App. at 379-80.

[14] 98 Wn. App. at 380 (citations omitted).

[15] *See Young v. State*, 370 Md. 686, 711 n.11, 806 A.2d 233 (2002) ("We are aware that *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d

were the regulations in *Arseneau*. RCW 10.99.050 applies only to the actual victim of the crime, not to an entire class of persons similar to the victim as in *Arseneau*. And contrary to Felix and Hammond's contention, RCW 10.99-.050 does not authorize no-contact orders that might not otherwise be imposed; it specifies only additional enforcement measures for no-contact orders that may already be issued as a sentencing condition.

■ ¶7 Finally, Felix contends that finding that his fourth degree assault was a crime of domestic violence expands his punishment because it results in a revocation of his right to carry a firearm.[16] RCW 9.41.040(2)(a)(i) forbids possession of a firearm if a person was previously convicted of "any of the following crimes when committed by one family or household member against another . . . : [a]ssault in the fourth degree, coercion, stalking, reckless endangerment, criminal trespass in the first degree, or violation of the provisions of a protection order or no-contact order restraining the person or excluding the person from a residence."

¶8 But in *State v. Schmidt*,[17] our Supreme Court rejected the argument that amendments to the firearm laws expanding the effects of prior convictions violated constitu-

---

549 (1996), was a double jeopardy case and that *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997), involved both double jeopardy and ex post facto claims. Nonetheless, we see no reason why we should not apply the same test for guidance in determining whether [former Md. Code Ann. art 27, § 792 (1957)] constitutes punishment for purposes of *Apprendi* . . . ."); *People v. Marchand*, 98 Cal. App. 4th 1056, 1064, 120 Cal. Rptr. 2d 687 (2002) ("Defendant fails to explain why these two factors, which a majority of our Supreme Court found dispositive in the ex post facto context, are not similarly dispositive in determining whether registration constitutes punishment for purposes of the due process clause under *Apprendi*."); *In re Jorge G.*, 117 Cal. App. 4th 931, 943, 12 Cal. Rptr. 3d 193 (2004) ("There is no reason the analysis should differ because this case involves the meaning of 'punishment' for due process purposes under *Apprendi*.").

[16] Because any felony conviction results in the loss of the right to possess a firearm and Felix was also convicted of a felony, we recognize that we could decline to address this question. But this is an important issue in the district and municipal courts where most misdemeanor domestic violence cases are adjudicated. The parties have recognized this and thoroughly briefed and argued the issue. We therefore address it.

[17] 143 Wn.2d 658, 23 P.3d 462 (2001).

tional ex post facto prohibitions. The court concluded that "[a]lthough the prohibitions of the firearms statute impose a disability and present a threat of criminal punishment if violated, the prohibitions do not amount to punishment for a prior conviction, nor do they 'alter the standard of punishment' applicable to those crimes."[18] In reaching this conclusion, the court considered the purpose and effect of the changes in the firearms laws and found persuasive the reasoning in the Ninth Circuit case of *United States v. Huss*,[19] where the court stated that if the past conduct in question can be understood as indicating unfitness to engage in future activity, the assumption will be that the statute is regulatory.[20] The *Schmidt* court also distinguished the right to bear arms from other fundamental rights such as voting, traveling, and privacy because possession of firearms has always been subject to government regulation for safety purposes.[21]

¶9 Conviction of a domestic violence misdemeanor can be viewed as indicating unfitness to engage in the activity of carrying firearms. And restricting the firearm rights of a person who commits a domestic violence misdemeanor clearly is an attempt to increase the safety of potential future domestic violence victims by decreasing such defendant's access to lethal force. Absent any principled reason to distinguish punishment for *Apprendi* purposes from punishment for ex post facto purposes, *Schmidt* resolves the issue here.

¶10 Affirmed.

Cox, C.J., and BECKER, J., concur.

Review denied at 155 Wn.2d 1003 (2005).

---

[18] *Schmidt*, 143 Wn. 2d at 676 (quoting *In re Pers. Restraint of Ness*, 70 Wn. App. 817, 823-24, 855 P.2d 1191 (1993)).

[19] 7 F.3d 1444 (9th Cir. 1993), *overruled in part on other grounds by United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998).

[20] *Schmidt*, 143 Wn.2d at 675.

[21] *Schmidt*, 143 Wn.2d at 676.